906 A.2d 347

**Zachary Shawn FOWLER**

v.

**MOTOR VEHICLE ADMINISTRATION.**

No. 111, Sept. Term, 2005.

Court of Appeals of Maryland.

Aug. 30, 2006.

332

334

Leonard R. Stamm (Andrew Hayduk, Goldstein & Stamm, P.A., on brief), Greenbelt, for petitioner.

Robert C. Cain, II, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, J.

We consider here whether, during a driver license suspension hearing conducted under § 16–205.1 of the Transporta-

tion Article, Maryland Code (1977, 2002 Repl.Vol.),[1] an administrative law judge ("ALJ"), faced with conflicting evidence in the form of an arresting police officer's written certification in a DR–15 Advice of Rights form and testimony from the arrested driver, may deny the driver's motion to subpoena the officer where the driver disputes that he was fully advised by the officer of the consequence for refusing to take a chemical breath test.[2]

## I.

On 12 June 2004, Zachary Shawn Fowler, Petitioner, was stopped by a Howard County police officer for making an unsafe lane change. The arresting officer, noticing a strong odor of alcohol, asked Fowler to perform certain field sobriety tests. Fowler performed poorly on these tests. The officer then asked Fowler to submit to a preliminary breath test ("PBT").[3] Fowler refused. Based on his performance on the field sobriety tests, the officer arrested Fowler for drunk driving and transported him to the police station.

At the police station, the officer provided Fowler with a DR–15 Advice of Rights form. The use of this form is intended, first, to advise the arrested driver of the consequences of refusing or failing a chemical breath test and, second, to certify that the officer complied with the statute's advice of rights requirement.[4] The form includes the follow-

---

1. All statutory references, unless otherwise noted, are hereafter to the Transportation Article of the Maryland Code (1977, 2002 Repl.Vol.).

2. A chemical breath test is "[a] test of a person's breath or of 1 specimen of a person's blood to determine alcohol concentration." § 16–205.1(a)(1)(iv)(1). While a person may not be compelled to take a chemical breath test, refusal to take a test results in automatic suspension of the person's driver's license. *See* § 16–205.1(b)(1).

3. A preliminary breath test ("PBT") may be requested by a police officer, without making an arrest and prior to issuing a citation, in order to "guide [ ] the police officer in deciding whether an arrest should be made." § 16–205.2(a) and (c). However, the State may not use the results of a PBT in a court action. § 16–205.2(c).

4. Under § 16–205.1(b)(2), an officer who believes that an individual has been driving under the influence of alcohol is required to "(i) Detain the

ing language to ensure the driver's receipt of the required advice of rights:

Read Before Signing:

I, the undersigned driver, acknowledge that I have been read or I have read the above stated Advice of Rights as certified by the police officer. I understand that this requested test is in addition to any preliminary tests that were taken.

Both Fowler and the arresting officer signed the DR–15 Advice of Rights form. The officer completed also a DR–15A form, which contained his sworn statement that he had reasonable grounds to stop Fowler and that Fowler refused a chemical breath test at the station after being fully advised of the applicable sanctions, as provided in the DR–15 Advice of Rights form.

Separate from the criminal charges for drunk driving, Fowler was charged also with refusing to take a chemical alcohol concentration breath test in violation of § 16–205.1. Section 16–205.1 imposes a mandatory license suspension upon an individual, suspected of driving under the influence of alcohol, who either refuses to take a chemical breath test or submits to a test and registers a blood alcohol concentration result in excess of 0.08.[5] In accordance with § 16–205.1(f)(1), Fowler

---

person; (ii) Request that the person permit a test to be taken; [and] (iii) Advise the person of the administrative sanctions that shall be imposed for refusal to take the test. . . . "

5. Section 16–205.1(a)(2) provides, in pertinent part:

Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented ... to take a [chemical breath] test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol. . . .

Section 16–205.1(b)(1)(i) describes the mandatory license suspension scheme:

(i) In the case of a person licensed under this title:

1. For a test result indicating an alcohol concentration of 0.08 or more at the time of testing:

A. For a first offense, suspend the driver's license for 45 days; or

requested a hearing before the Motor Vehicle Administration ("MVA") to contest his license suspension. Fowler filed also a motion requesting a subpoena for the arresting officer, in compliance with the Code of Maryland Regulations ("CO-MAR") 11.11.03.07, to question the officer in an effort to support his claim that he was not advised fully of the administrative sanctions for refusing to take an alcohol concentration chemical breath test. The subpoena request proffered that the officer would testify "that the officer did not fully advise [Fowler] of the administrative sanctions that shall be imposed for submitting to or refusing a test" and "that legally improper and misleading advice was given." Fowler deferred a decision on his subpoena request to the ALJ conducting his suspension hearing. *See* COMAR 11.11.03.07D.

At his hearing before the ALJ, Fowler disputed that he was fully advised of his rights. Specifically, he contended that while the officer advised him that his license would be suspended for 120 days if he refused to take a breath test, the officer did so only at the scene of the arrest, but not at the police station. Moreover, Fowler argued that when he was provided the DR–15 Advice of Rights form at the station the officer informed him that his license was being suspended because Fowler already had refused to take the test, which Fowler believed referred to the PBT.[6] Fowler stated that he

---

B. For a second offense or subsequent offense, suspend the driver's license for 90 days; or
2. For a test refusal:
A. For a first offense, suspend the driver's license for 120 days; or
B. For a second offense or subsequent offense, suspend the driver's license for 1 year.

**6.** The following excerpt is from Fowler's testimony at the suspension hearing:

[Fowler's Attorney]: Did he ever tell you that if you did not take the test at the station that your license would be suspended for 120 days?
[Fowler]: Well, he told me that on the street.
[Fowler's Attorney]: What did he say on the street?
[Fowler]: He told me that if I—he actually told me when I was actually—on the street he told me that if I didn't take the test he would take me to the station. When I got to the station after waiting there for an extensive period of time he brought me into the room

was never offered a second test, the chemical breath test, at the station. He believed that by signing the DR–15 form he was merely acknowledging his refusal of the PBT requested by the officer on the street and, therefore, he did not knowingly refuse a chemical breath test at the station. While Fowler conceded that he was given the DR–15 form to read and sign, he stated that he merely "skimmed over it" before signing it. He testified as well that the officer did not read it to him. Fowler asserted that if the arresting officer were subpoenaed, the officer would testify consistently with Fowler's version.[7]

After hearing Fowler's proffer of what the arresting officer would testify to, the ALJ denied Fowler's subpoena request. In his oral ruling, the ALJ stated:

> First off, I'm going to find that the licensee was fully advised. I conclude primarily from the certification of the officer that he was fully advised and it's bolstered by the testimony of the licensee wh[o] was told to read it and he skimmed over it. And I don't see the need to call the officer to cross examine him. There's no indication the PBT was relied on or not relied on in this case.
>
> \* \* \*
>
> My finding is he was fully advised, and the other finding is I don't see the need to call the officer to clarify anything. . . .

The ALJ suspended Fowler's license for 120 days, but modified the sentence to only five days of suspension on the condition that he participate in the Ignition Interlock Program for one year.

---

and gave me papers to actually look at and read, and told me that because I didn't take the test my license was going to be suspended and it was his prerogative whether to detain me that night or not to, so he decided not to.

[Fowler's Attorney]: Did he ever distinguish between the test that you refused on the street, did he ever explain to you that it was a separate test that he wanted you to take at the station?

[Fowler]: No. . . .

7. The ALJ entered both the DR–15 Advice of Rights form and the DR–15A form as evidence for the Motor Vehicle Administration ("MVA").

Fowler sought judicial review of the ALJ's decision by the Circuit Court for Montgomery County, which affirmed relying upon this Court's decision in *Motor Vehicle Administration v. Karwacki*, 340 Md. 271, 666 A.2d 511 (1995). The Circuit Court concluded that the ALJ properly exercised his discretion by resolving the conflicting evidence of Fowler's testimony and the officer's certification on the DR–15 Advice of Rights form. Noting that Fowler had an opportunity to read the DR–15 form, the court found there was substantial evidence to support the ALJ's decision that Fowler was informed of his rights. Specifically, the Circuit Court emphasized that under *Karwacki*, "[t]he ALJ was under no obligation to believe Petitioner over the officer's sworn statement." Thus, because the ALJ found the police officer's sworn statement credible, the Circuit Court determined that the ALJ properly rejected Fowler's request to subpoena the arresting officer.

Fowler filed a Petition for Writ of Certiorari with this Court. We granted Fowler's petition to consider whether the ALJ, faced with the officer's certification on the DR–15 Advice of Rights form and Fowler's conflicting testimony, properly denied Fowler's request to subpoena the arresting officer.[8] *Fowler v. MVA*, 390 Md. 500, 889 A.2d 418 (2006).

## II.

Under § 10–222(h)(3) of the State Government Article, Maryland Code (1984, 2004 Repl.Vol.), a reviewing court may reverse or modify an administrative decision of a state agency if it:

(i) is unconstitutional; (ii) exceeds the statutory authority or jurisdiction of the final decision maker; (iii) results from an unlawful procedure; (iv) is affected by any other error of

---

8. Fowler submitted the following question in his petition:

Whether an ALJ in a driver license suspension hearing must apply the rule of *Forman v. MVA*, [332 Md. 201, 630 A.2d 753 (1993),] rather than *MVA v. Karwacki*, [340 Md. 271, 666 A.2d 511 (1995),] where there is a dispute on a genuine issue of fact and the licensee has properly requested a subpoena for the witness?

law; (v) is unsupported by competent, material and substantial evidence in light of the entire record as submitted; or (vi) is arbitrary or capricious.

A final administrative decision or order shall contain "separate statements of: (i) the findings of fact; (ii) the conclusions of law; and (iii) the order." Maryland Code (1984, 2004 Repl. Vol.), State Government Article, § 10–221(b)(1). As this Court has noted, for a reviewing court to perform properly its examination function, an administrative decision must contain factual findings on all the material issues of a case and a clear, explicit statement of the agency's rationale. *Harford County v. Earl E. Preston, Jr., Inc.*, 322 Md. 493, 505, 588 A.2d 772, 778 (1991). A fully explained administrative decision also fulfills another purpose; it recognizes the "fundamental right of a party to a proceeding before an administrative agency to be apprised of the facts relied upon by the agency in reaching its decision. . . ." *Id.*

When evaluating an administrative agency's decision,[9] a reviewing court must not substitute its judgment for that exercised properly by the agency, especially where the expertise of the agency is employed in reaching its decision. *See Board of Physician v. Banks*, 354 Md. 59, 68, 729 A.2d 376, 381 (1999). "It is well-settled in this State that it is the function of an administrative agency to make factual findings and to draw inferences from the facts found." *Karwacki*, 340 Md. at 280, 666 A.2d at 515. As such, a court's role in reviewing an agency's factual determinations is particularly narrow, limited to determining whether there is substantial evidence in the record to support the agency's decision. *See Banks*, 354 Md. at 67–68, 729 A.2d at 380; *United Parcel v. People's Counsel*, 336 Md. 569, 576, 650 A.2d 226, 230 (1994). In defining substantial evidence, we have stated that it requires "relevant evidence [that a] reasonable mind might

---

9. In this case, the MVA is the relevant administrative agency. The MVA delegated authority to conduct hearings and render final decisions in contested matters, such as Fowler's case, to the Office of Administrative Hearings. *See* Code of Maryland Regulations ("COMAR") 11.11.02.07.

accept as adequate to support a conclusion." *Caucus v. Maryland Securities,* 320 Md. 313, 324, 577 A.2d 783, 788 (1990); *see also Liberty Nursing v. Department of Health and Mental Hygiene,* 330 Md. 433, 443, 624 A.2d 941, 946 (1993) (stating that "if reasoning minds could reasonably reach the conclusion reached by the agency from the facts in the record, then it is based upon substantial evidence, and the court has no power to reject that conclusion"). An agency decision is presumed to be valid on its face. *Liberty Nursing,* 330 Md. at 443, 624 A.2d at 946. Thus, where the dispute concerns a factual matter and substantial evidence supports an agency or administrative decision, we affirm. *Id.*

 A reviewing court is not under similar restraint when evaluating administrative decisions premised on erroneous conclusions of law. *See id.*(clarifying that when an issue before an agency is one of law, no deference is appropriate and the scope of review is much broader than when reviewing factual determinations); *People's Counsel v. Maryland Marine,* 316 Md. 491, 497, 560 A.2d 32, 34–35 (1989). Despite this broader scope of review, we have noted that "with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency." *MVA v. Lytle,* 374 Md. 37, 57, 821 A.2d 62, 73 (2003) (quoting *Banks,* 354 Md. at 69, 729 A.2d at 381). Thus, a reviewing court may give considerable weight to the agency's interpretation of its own statutes. *Id.*

## III.

Section 16–205.1 imposes mandatory license suspension for an individual, suspected of driving under the influence of alcohol, who either refuses to take a chemical breath test or submits to a test and registers a result in excess of the legal maximum of 0.08 alcohol concentration.[10] To encourage driv-

---

**10.** This section has been referred to as "Maryland's 'implied consent' and 'administrative per se' law against drunk driving" because it provides for "swift administrative action" to suspend suspected drunk drivers' licenses, in addition to criminal penalties that may also be

ers to submit to a chemical breath test, the statute imposes harsher sanctions for refusing to submit to the test than for failing the test. *See* § 16–205.1(b)(1)(i); *Forman v. Motor Vehicle Admin.*, 332 Md. 201, 206, 630 A.2d 753, 756 (1993) (stating that the strict penalty for refusing to take a breath test "is designed to encourage licensees to take, rather than to refuse" alcohol concentration breath tests). The statute, however, specifically requires officers to advise drivers of the sanctions to ensure that arrested drivers may make fully informed decisions. *See* § 16–205.1(b)(1) and (2). A driver whose license has been suspended under § 16–205.1 may request a hearing before the MVA on certain limited issues, including whether the driver was "fully advised." [11] *See* § 16–205.1(f)(1).

In *Forman v. Motor Vehicle Administration, supra*, 332 Md. at 222, 630 A.2d at 764, this Court examined the options an ALJ considers when a driver, during a § 16–205.1 hearing, files a motion for a subpoena request. Forman, charged with a violation of § 16–205.1 for refusing a chemical breath test, requested both an administrative hearing to contest her suspension and a subpoena to compel the arresting officer to testify at her hearing. *Forman*, 332 Md. at 208, 630 A.2d at 757. The decision of the subpoena request was deferred to the ALJ at the hearing. *Forman*, 332 Md. at 209, 630 A.2d at 757. During the hearing, Forman asserted that, although she had read and signed the DR–15 Advice of Rights form, she was confused and misled by the officer's statements which suggested that suspension may not be mandatory. *Forman*, 332 Md. at 208–11, 630 A.2d at 758–59. She contended also that she was induced by the officer to refuse the test, an action contrary to the language of the statute and the intent of

imposed. *Motor Vehicle Admin. v. Gaddy*, 335 Md. 342, 344 n. 1, 643 A.2d 442, 442 n. 1, (1994); *see generally Motor Vehicle Admin. v. Shrader*, 324 Md. 454, 460–62, 597 A.2d 939, 941–43 (1991) (recounting the history leading to the passage of § 16–205.1).

11. Section 16–205.1(f)(7)(i) sets forth the six issues that may be raised at a hearing under § 16–205.1(f).

the Legislature. *Id.* Forman stated that the officer promised to return her to a friend's home if she refused the test, but told her he would take her to the police station if she took and failed the test. *Forman*, 332 Md. at 210, 630 A.2d at 758. The ALJ denied Forman's motion for a subpoena request. *Forman*, 332 Md. at 211, 630 A.2d at 759.

■ Finding that the ALJ failed to resolve the critical issue raised by Forman concerning her advice of rights, we reversed the Circuit Court's judgment affirming the ALJ's decision denying the subpoena request. *Forman*, 332 Md. at 222, 630 A.2d at 764. In doing so, we set forth the following analytical framework for ALJs when considering subpoena requests:

> [W]hen faced with a licensee's proffer and subpoena request, an ALJ has three distinct choices: (1) accept the proffer's contents as true, and indicate this acceptance; (2) reach no conclusion regarding the truth of the proffer (essentially suspending judgment) and issue the subpoena; or (3) reject the proffer and subpoena request entirely, and provide a valid explanation of the rejection.

*Id.*

Additionally, in *Forman*, we emphasized the need for an individual to receive a full and accurate advice of rights under the implied consent statute. *Forman*, 332 Md. at 212–19, 630 A.2d at 759–63. We stated that it is imperative that a "person detained for drunk driving . . . be capable of making a knowing and voluntary decision to refuse the alcohol concentration test." *Forman*, 332 Md. at 218, 630 A.2d at 762. This is because an individual's driver's license is an important property interest that may be vital to his or her ability to function in society on a daily basis. *See Forman*, 332 Md. at 214, 630 A.2d at 760. Importantly, we clarified that " '[f]ully advised' [under § 16–205.1(f)(8)(i)(3)] means not only advised *initially,* but the detaining officer must also take care not to *subsequently* confuse or mislead the driver as to his or her rights under the statute." *Forman*, 332 Md. at 217, 630 A.2d at 762 (Emphasis in original). Likewise, we cautioned that due process demands that the State "not mislead the defendant or

construct road blocks, thus unduly burdening [the defendant's] decision-making." *Forman,* 332 Md. at 215, 630 A.2d at 761 (quoting *Hare v. Motor Vehicle Admin.,* 326 Md. 296, 304, 604 A.2d 914, 918 (1992)).

Two years after *Forman,* in *Motor Vehicle Administration v. Karwacki, supra,* 340 Md. at 288–89, 666 A.2d at 519, we re-affirmed the three-option framework enunciated in *Forman.* Karwacki, charged under § 16–205.1, argued, like Forman, that he was not fully advised under the statute. *Karwacki,* 340 Md. at 279, 666 A.2d at 515. Specifically, as a repeat offender, Karwacki contended that the arresting officer only advised him that his license would be suspended for 120 days and did not inform him of the increased term of suspension for a second offense. *Id.* Faced with conflicting evidence from Karwacki's testimony and the officer's certification on the DR–15 form, the ALJ concluded that the certification was more credible than the driver's drunken recollection and suspended his license. *Karwacki,* 340 Md. at 278, 666 A.2d at 514. Affirming the decision, we noted that "the ALJ was under no obligation to believe [Karwacki]" over the prima facie evidence of the DR–15 form. *Karwacki,* 340 Md. at 289, 666 A.2d at 520.

In contrast to *Forman,* however, the petitioner in *Karwacki* did not file a motion for a subpoena request for the charging officer.[12] *Id.* Consequently, the ALJ was left to consider only

---

12. In *Karwacki,* we noted, on numerous occasions, the absence of a subpoena request. For instance, in identifying the issue, we described it as "whether, at a probable cause hearing, held pursuant to [§ 16–205.1(f)(7)], an administrative law judge may give greater credit to the sworn written statement of an absent police officer, *who was not subpoenaed by either party,* than to the conflicting testimony of the motorist." *Karwacki,* 340 Md. at 273, 666 A.2d at 512 (Emphasis added). Later, in distinguishing *Forman,* we noted it was not controlling because in Karwacki's case "[he] *did not subpoena the arresting officer,* and consequently, did not proffer what the officer's testimony would have been had he been called to testify." *Karwacki,* 340 Md. at 287, 666 A.2d at 519 (Emphasis added). Further, in summarizing our holding, we stated that *"by not subpoenaing the arresting officer* and offering only his sworn testimony, directly conflicting the arresting officer's sworn statement on a critical point, [Karwacki] presented the

the evidence in front of him: the DR–15 certification form and the petitioner's conflicting testimony. *Id.* As we noted, by not subpoenaing the arresting officer, Karwacki "presented the ALJ with an all or nothing choice." *Id.* Because a signed DR–15 form serves as prima facie evidence to demonstrate that the driver refused the chemical breath test, we recognized that the ALJ exercised properly his discretion to resolve the conflicting evidence against the driver. *Karwacki,* 340 Md. at 283, 289, 666 A.2d at 516, 520. We ultimately affirmed the ALJ's determination that Karwacki's contradictory statements were not sufficient to rebut the documentary evidence. *Karwacki,* 340 Md. at 289, 666 A.2d at 520.

## IV.

At his suspension hearing, Fowler filed a motion requesting a subpoena for the arresting officer; therefore, we shall analyze his case according to the principles applied in *Forman.* As we noted, *supra,* where a motion for a subpoena request has been filed, an ALJ is faced with three options. *Forman,* 332 Md. at 222, 630 A.2d at 764. First, an ALJ may accept explicitly the entire proffer, denying the subpoena request. *Id.* The ALJ then assesses all the evidence before him or her, including the proffer. *Id.* Under this option, an ALJ determines if the proffer, assumed to be true in its entirety, is sufficient to rebut any conflicting evidence. Second, an ALJ may reject the proffer as a whole, also denying the subpoena request; however, the ALJ must provide additionally a valid explanation for the rejection. *Id.* As we have noted, this option "enables the ALJ to dispose of frivolous or otherwise improper subpoena requests." *Id.; see also* Maryland Code (1974, 1982 Repl.Vol.), State Government Article,

---

ALJ with an all or nothing choice." *Karwacki,* 340 Md. at 289, 666 A.2d at 520 (Emphasis added). The ALJ was therefore entitled to, and did, resolve the factual dispute in favor of the prima facie evidence of the DR–15 certification. *Id.* The ALJ was "under no obligation to believe the respondent. Nor, *in the absence of a request to do so,* was he obliged to even consider whether to subpoena the arresting officer." *Id.* (Emphasis added).

§ 10–213(d) (allowing agencies to exclude evidence that is incompetent, irrelevant, immaterial, or unduly repetitious at administrative hearings). Finally, an ALJ, uncertain of the accuracy of the driver's proffer, may grant the subpoena request. *Forman*, 332 Md. at 222, 630 A.2d at 764. This action effectively suspends judgment on the merits of determining whether to suspend the driver's license in order to allow the ALJ to hear additional testimony. *Id.*

In the present case, while it is clear that the ALJ denied the subpoena request, the rationale or basis for his decision are not apparent. After hearing Fowler's testimony and proffer, the ALJ stated:

> First off, I'm going to find that the licensee was fully advised. I conclude primarily from the certification of the officer that he was fully advised and it's bolstered by the testimony of the licensee wh[o] was told to read it and he skimmed over it. And I don't see the need to call the officer to cross examine him. There's no indication the PBT was relied on or not relied on in this case.
>
> * * *
>
> ▩ My finding is he was fully advised, and the other finding is I don't see the need to call the officer to clarify anything. . . .

Under *Forman*, an ALJ's decision either to deny or grant the subpoena request must be clearly indicated. *Forman*, 332 Md. at 222, 630 A.2d at 764. Specifically, we emphasized that "the ALJ may only avoid issuing the subpoena when he or she explicitly accepts the proffer or rejects the proffer and provides a basis for this rejection." *Id.* The record in the present case yields no specific or explicit statement indicating whether the ALJ accepted or rejected Fowler's proffered testimony. Thus, as a reviewing court, we are unable to perform our function because the ALJ did not state clearly his decision or enunciate fully his rationale for denying Fowler's subpoena request.

## A.

For example, one might infer from the ALJ's language, *see supra*, that he attempted to proceed under *Forman* by rejecting Fowler's proffer along with his subpoena request. The crux of Fowler's argument centers on his assertion that he was not offered a second test at the police station and his belief that the DR–15 form merely acknowledged his refusal of the PBT. The ALJ's statement regarding the PBT may be read as a rejection of that proffered testimony. Yet, assuming that the ALJ intended to reject the proffer and deny the request, he did not proceed correctly under *Forman*.

First, the ALJ did not explain the reasons for his rejection. He concluded only that Fowler was fully advised and that there was no need for the subpoena. Under the *Forman* framework, however, an ALJ who rejects the proffer of a driver and denies a subpoena request must also "provide a valid explanation of the rejection." *Forman*, 332 Md. at 222, 630 A.2d at 764. A valid explanation should include making clear the ALJ's decision to reject the proffer; it should not require a reviewing court to draw inferences. A valid explanation also should provide a "basis for rejection" by explaining the reasons behind the ALJ's decision; it should not merely announce a conclusion.

The Maryland Administrative Procedure Act, Maryland Code (1984, 2004 Repl. Vol), State Government Article, and COMAR set forth reasons for denying a subpoena request. Section 10–213 of the Administrative Procedure Act governs the admission and exclusion of evidence at administrative hearings and allows agencies to exclude evidence that is incompetent, irrelevant, immaterial, or unduly repetitious. Maryland Code (1984, 2004 Repl.Vol.), State Government Article, § 10–213(d). This language is mimicked in the MVA's regulation pertaining to § 16–205.1 proceedings and subpoena requests. *See* COMAR 11.11.03.07. While the decision of whether to issue a subpoena is within the ALJ's discretion, COMAR 11.11.03.07C provides circumstances that warrant the denial of a subpoena request: "[a] request may be refused if

the testimony or evidence to be offered: (1) is immaterial, irrelevant or unduly repetitious; or (2) does not pertain to a genuine issue in the contested case." Here, the ALJ stated that he did not "see the need to call the police officer to cross-examine him," but failed to detail the circumstances purportedly justifying this rejection.

Moreover, the option of rejecting the proffer and denying the subpoena request is inappropriate given the factual circumstances in the present case. In *Forman*, we observed that this option "enables the ALJ to dispose of frivolous or otherwise improper subpoena requests." *Forman*, 332 Md. at 222, 630 A.2d at 764. In the present case, Fowler proffered that the police officer did not fully advise him of the consequences of refusing a breath test, as required under § 16–205.1; also, he claimed he was misled by the officer's statements and the previous administration of a PBT. This proffer presents a genuine factual dispute for the ALJ to resolve. As we noted in *Forman*, "evidence pertaining to negation of the advice of rights or inducement to refuse the alcohol concentration test is neither incompetent, irrelevant, immaterial, or unduly repetitious." *Forman*, 332 Md. at 224, 630 A.2d at 765; *see also* § 16–205.1(f)(7)(i)(3) (listing "[w]hether the police officer requested a test after the person was fully advised" as one of the issues that may be raised in the hearing); *Forman*, 332 Md. at 223–24, 630 A.2d at 765 (concluding that proffered evidence as to "whether Forman was properly and fully advised of the administrative sanctions" directly pertained to a genuine issue). It is important also that Fowler's claim be resolved clearly, in light of the different statutory consequences of refusing a chemical breath test versus a PBT,[13] particularly because "[r]efusal to submit to a preliminary breath test [does] not constitute a violation of § 16–205.1." § 16–205.2(d). If the ALJ decides Fowler was

---

13. Section16–205.2 governs the administration of a preliminary breath test ("PBT"). While the results of a preliminary breath test serve as a guide for the officer to determine if arrest is necessary, there is no mandatory license suspension for a test failure or refusal to take a PBT. *See* § 16–205.2(c).

not offered a breath test other than the PBT requested on the street prior to his arrest, Fowler cannot be convicted of a violation of § 16–205.1.

Finally, the ALJ appears to have engaged in a credibility assessment in forming his opinion about Fowler's contentions regarding the PBT. Under *Forman*, however, none of the options provide for an ALJ to make a credibility determination when ruling on a subpoena request. Rather, the ALJ must either accept explicitly the proffer in its entirety or reject the stated proffer in whole, without assessing its validity in either case; otherwise, the ALJ must issue the subpoena to hear additional testimony.

In *Karwacki*, this Court highlighted the ability generally of an ALJ to make credibility assessments. *See Karwacki*, 340 Md. at 283–84, 666 A.2d at 517. We noted that frequently "the resolution of conflicting evidence and inconsistent inferences involves making credibility determinations." *Karwacki*, 340 Md. at 284, 666 A.2d at 517. The ALJ in *Karwacki*, however, was faced with a confined set of conflicting evidence—that of the DR–15 form and the driver's contrary testimony—due to the petitioner having not filed a motion for a subpoena request. Consequently, we concluded the ALJ properly engaged in a credibility determination finding that the officer's sworn certification in the DR–15 form was more credible. *Karwacki*, 340 Md. at 289, 666 A.2d at 514. Where an ALJ is forced to consider only the factual evidence before him, as in *Karwacki*, this assessment is within the ALJ's province to resolve. In the present case, however, the ALJ, who concluded that Fowler did not rely as he claimed on the circumstances surrounding the advisement regarding the PBT, in fact seemed to reject Fowler's proffer by making a credibility assessment that Fowler did not rely on his refusal of the PBT in signing the DR–15 form. This credibility assessment is not permitted under *Forman*.

### B.

Under yet another scenario, one might infer that the ALJ proceeded under the *Forman* framework by accepting

Fowler's proffer, but still denied his subpoena request. When accepting an individual's proffer, the ALJ treats it as a proven fact and, consequently, there is no need to summon the officer to corroborate or clarify the information. *See Forman*, 332 Md. at 224, 630 A.2d at 765. Therefore, the ALJ's statement that there was no need to summon the officer could be viewed as an implicit acceptance of Fowler's proffer and an implicit weighing of the evidence of the proffer against the officer's certification. This requires a substantial inferential leap, however, one that we are not prepared to take on this record. Even if we were prepared to do so, under this *Forman* option, an ALJ is required to "explicitly accept[ ] the proffer." *Forman*, 332 Md. at 222, 630 A.2d at 764. The record does not indicate that this was done.

Because we are remanding the present case for further proceedings, we pause to highlight how an ALJ might proceed under this option. Accepting the proffer of the driver as to what the certifying officer's testimony would be does not imply automatically that the driver's proffer will be sufficient to exonerate him, or to overcome the prima facie evidence of the DR–15 form. Instead, the ALJ first accepts the proffer as if it were proven true. By accepting the proffer of the certifying officer's testimony as truth there is no need to subpoena the officer to reiterate these facts. *Forman*, 332 Md. at 224, 630 A.2d at 765. After accepting explicitly the proffer, the ALJ next assesses the proffer against other competing evidence to determine if the evidence is sufficient to overcome other conflicting evidence. The DR–15 Advice of Rights form constitutes prima facie evidence of a test refusal. Prima facie evidence is "good and sufficient on its face ... to establish a given fact," unless contradicted. *Karwacki*, 340 Md. at 283, 666 A.2d at 516–17 (quoting BLACK'S LAW DICTIONARY 1190 (6th Ed.1990)). Thus, the ALJ must exercise his or her discretion and determine if a driver's proffer as to what the certifying officer would testify overcomes sufficiently the prima facie evidence of the form.

## V.

 The importance of clear, explicit administrative agency decisions cannot be over-emphasized. "[I]t is appropriate to point out, as we have in previous opinions, not only the importance but the necessity that administrative agencies resolve all significant conflicts in the evidence and then chronicle, in the record, full, complete and detailed findings of fact and conclusions of law." *State Comm'n on Human Rel. v. Malakoff,* 273 Md. 214, 229, 329 A.2d 8,17 (1974). Administrative law judges must fully explain their decisions so that this Court and others may perform the function of review accurately and effectively. *Harford County,* 322 Md. at 505, 588 A.2d at 778. Such explanation is not only for the sake of judicial economy, but also ensures that the parties understand fully an agency's decisions. *See id.*

Upon remand, the option to reject both the proffer and the subpoena request is not viable, given the need to resolve the material factual issue raised by Fowler's proffer. Two options remain. The ALJ may accept explicitly the proffer, denying the subpoena request, and proceed as described, *supra.* Otherwise, the ALJ may choose to issue the subpoena. This option should be executed if the ALJ harbors reservations as to the accuracy or credibility of Fowler's proffer. *See Forman,* 332 Md. at 224, 630 A.2d at 765. While we recognize that the General Assembly elected specifically to make the DR–15 form prima facie evidence to avoid an unnecessary burden on the police force,[14] we do not think the Legislature intended to preclude an officer from being called to testify at a suspension hearing when a key factual issue is in dispute, particularly where the issue involves an individual's advice of his or her rights under the law.

---

**14.** *See* § 16–205.1(f)(7)(ii); *see also MVA v. Lytle,* 374 Md. 37, 51, 821 A.2d 62, 70 (2003) (recounting the legislative history behind § 16–205.1 and concluding that the "Legislature refused to adopt [statutory] amendments which would have allowed a driver to compel attendance of the police officer . . . at the hearings and, instead, retained the nature of an administrative per se hearing as one where 'a sworn statement is prima facie evidence of a violation of § 16–205.1' ").

354

JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED, AND CASE REMAND-ED TO THAT COURT WITH DIRECTIONS TO REVERSE THE DECISION OF THE MOTOR VEHICLE ADMINIS-TRATION AND REMAND THE CASE TO THE OFFICE OF ADMINISTRATIVE HEARINGS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE MOTOR VEHICLE ADMIN-ISTRATION.