13 A.3d 1256

Matthew C. THOMAS

v.

MOTOR VEHICLE ADMINISTRATION.

No. 31, Sept. Term, 2010.

Court of Appeals of Maryland.

Feb. 24, 2011.

---

Walter W. Green (Law Office of Walter W. Green, College Park, MD), on brief, for petitioner.

Robert C. Cain, II, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Glen Burnie, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, J.

Again we are asked to interpret the legislation imposing administrative sanctions on drivers for refusal to submit to a test to determine alcohol concentration. *See* Md.Code (1977, 2009 Repl.Vol.), Section 16–205.1 of the Transportation Article ("TA"). Our interpretation is guided by the legislative intent to enhance public safety with prompt removal of drunk drivers from the road.

Upon being detained on suspicion of drunk driving, Petitioner Matthew C. Thomas was asked to submit to a preliminary breath test pursuant to TA Section 16–205.2. He was then advised of his rights with regard to a alcohol concentration test ("chemical breath test") by oral recitation of a standard Maryland Motor Vehicle Administration ("MVA") form. Thomas refused to take any breath test and was arrested. An Administrative Law Judge ("ALJ") later suspended Thomas's driver's license for his refusal of the chemical breath test, and the Circuit Court for Prince George's County affirmed that decision.

■ On appeal, Thomas argues that he had been improperly advised of his rights because the officer had never offered Thomas the chemical breath test and had not arrested or formally charged Thomas prior to his refusal. Thomas claims that this procedure was unduly misleading, and thus his license should not have been suspended. We granted Thomas's Petition for Writ of Certiorari [1] to consider the following questions:

---

1. This Court has appellate jurisdiction over this case, through our writ of certiorari, because the Circuit Court's judgment below was on appeal from a final administrative decision arising under Title 16 of the Transportation Article ("TA"). *See* Md.Code (1973, 2006 Repl.Vol.), § 12–305 of the Courts & Judicial Proceedings Article ("CJP") (granting jurisdiction in such cases). The Court of Special Appeals does not have jurisdiction to review the Circuit Court's decision. *See* CJP § 12–306 to –08.

A.   As a matter of first impression, does *Maryland Annotated Code*, Transportation § 16–205.1(b) require an officer to arrest, take into custody, and/or charge a person with a violation of the traffic law before effectively satisfying the officer's duty to fully advise a person of the administrative sanctions for refusal of a § 16–205.1 chemical breath test as a matter of law?

B.   Whether the Petitioner was not "fully advised" of the administrative sanctions for refusing a chemical breath test and was mislead where Petitioner was requested to submit to a preliminary breath test by an officer at the scene of a traffic stop, Petitioner initially agreed to the preliminary breath test and the officer immediately began reading the DR–15 advice of rights form at the scene of the traffic stop?

C.   Whether the denial of a MVA subpoena request for a police officer by an Administrative Law Judge[,] where the documentary evidence constituting the testimony of the absent officer is conflicting on its face[,] requires resolution of the conflicting testimony in favor of Petitioner and dismissal of the MVA's case?

We shall hold that Thomas was properly advised of his rights, and thus affirm the judgment of the Circuit Court for Prince George's County.

### FACTS AND LEGAL PROCEEDINGS

On a late evening in March, Private Nemser and another police officer of the Hyatsville Police Department responded to a complaint that a person driving a silver Mustang was speeding and blaring loud music. After arriving at the location, Nemser observed a silver Mustang and pulled behind it. Thomas, the driver of that vehicle, then accelerated quickly, spinning the car's tires. Nemser initiated a traffic stop and his fellow officer approached the vehicle and ordered Thomas out. Thomas struggled to exit his vehicle, and Nemser noticed that he had bloodshot eyes, slurred speech, and a strong odor of alcohol on his breath. The other officer observed a nearly empty pint bottle of Jack Daniels Whiskey sitting in

Thomas's cup holder. Thomas was unable to maintain his balance well enough to perform any Field Sobriety Tests.

Nemser asked Thomas to take a preliminary breath test, and Thomas agreed. Nemser then began to advise Thomas of his rights by reading to him from the DR–15 Advice of Rights Form. This form sets forth a driver's rights with regard to the chemical breath test, a test that is wholly separate from the preliminary breath test. Compare TA § 16–205.1 (chemical breath test)[2] with TA § 16–205.2 (preliminary breath test).[3] The very first paragraph of the DR–15 provides as follows:

> You have been stopped or detained and reasonable grounds exist to believe that you have been driving or attempting to drive a motor vehicle under circumstances requiring that you be asked to submit to a test under § 16–205.1 of the Maryland Vehicle Law. In this situation, the law deems that you have consented to take a test to measure the alcohol concentration or drug or controlled dangerous substance content in your system. You may refuse to submit to the test(s), unless you were in a motor vehicle accident resulting in the death of or life-threatening injury to another person.

The remainder of the DR–15 form sets forth the consequences for refusing to submit to the Section 16–205.1 chemical test.[4]

---

**2.** TA Section 16–205.1's chemical breath test is defined as: "1. A test of a person's breath or of 1 specimen of a person's blood to determine alcohol concentration; 2. A test or tests of 1 specimen of a person's blood to determine the drug or controlled dangerous substance content of the person's blood; or 3. Both[.]" TA § 16–205.1(a)(1)(iv).

**3.** A preliminary breath test is "to be administered by the officer using a device approved by the State Toxicologist." TA § 16–205.2(a). The device used is a "portable, roadside screening device approved by the Toxicologist, pursuant to Transportation Article, 16–205.2, Annotated Code of Maryland, for use on individuals stopped for suspicion of driving while impaired or under the influence of alcohol." COMAR 10.35.02.02(B)(8).

**4.** Section 16–205.1 of the Transportation Article ("Suspension or Disqualification for Refusal to Submit to Chemical Tests for Intoxication") provides in relevant part:

(a) * * *

A refusal results in suspension of the driver's license. *See* TA § 16–205.1(b)(1)(i)(3). The preliminary breath test, on the other hand, has no adverse consequences for refusal. *See* TA § 16–205.2(d).

As Nemser was reading from the DR–15, Thomas informed the officer that he would not sign any paperwork or take a breath test.[5] Nemser signed the DR–15, certifying that he

---

(2) Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented ... to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title.

(b) * * *

(1) Except as provided in subsection (c) of this section, a person may not be compelled to take a test. However, the detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.08 or more, the Administration shall:

(i) In the case of a person licensed under this title:

\*　　\*　　\*

3. For a test refusal:

A. For a first offense, suspend the driver's license for 120 days ...

\*　　\*　　\*

(2) Except as provided in subsection (c) of this section, if a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol [or] while impaired by alcohol ... the police officer shall:

(i) Detain the person;

(ii) Request that the person permit a test to be taken;

(iii) Advise the person of the administrative sanctions that shall be imposed for test results indicating an alcohol concentration of at least 0.08 but less than 0.15 at the time of testing;

(iv) Advise the person of the administrative sanctions ... that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.15 or more at the time of testing; and

(v) Advise the person of the additional criminal penalties[.]

Md.Code (1977, 2009 Repl.Vol.), § 16–205.1 of the Transportation Article ("TA").

5. Despite these declarations, Thomas did sign the DR–15A Order of Suspension and his four traffic citations that night.

advised Thomas of his rights pursuant to the form, and in the place for the driver's signature, Nemser wrote "REFUSED." Nemser also checked the box indicating that the driver refused the chemical breath test. He then took Thomas into custody and placed him in the front seat of his marked police car. Before they departed for the police station, however, Thomas urinated in the front seat and Nemser immediately removed him. Nemser then issued four traffic citations to Thomas, and, to prevent further damage to the vehicle, released Thomas to walk to his home, which was approximately 100 yards away.

Three months after that night, Thomas appeared for his administrative hearing.[6] At the hearing, the ALJ accepted into evidence Nemser's DR–15A Order of Suspension, DR–15 Advice of Rights Form, Officer's Alcohol Influence Report, and Thomas's driving record. Although Nemser was not present at the hearing to testify, he had summarized the night's events in his Alcohol Influence Report, part of which provided:

> THOMAS continually asked why he was stopped. When he was told that he was driving his vehicle, he stated "My car is parked in front of my house." He was unaware that he was sitting ten feet away from his vehicle. THOMAS was staggering around until we had him sit on the curb. I asked him if he would like to take a preliminary breath test and he said yes. While reading the DR–15 to THOMAS, he informed me that he would not sign any paperwork or take a breath test. I took THOMAS into custody and placed him in the front seat of my marked [car] and prepared to transport him to the [police station]. Just before I began

---

6. Prior to the hearing, the Motor Vehicle Administration ("MVA") had requested that the Office of Administrative Hearings ("OAH") subpoena Private Nemser to testify at the hearing that he properly advised Thomas of any possible administrative sanctions. That request was denied because the OAH determined that the "[d]ocuments [were] sufficient to establish grounds for stop; that licensee was driving; that there was the use of alcohol; [and] that the licensee was properly advised" according to the boilerplate language on the DR–15 form. No objection was made to this ruling.

driving THOMAS looked at me and stated "I just fucked you!" I asked him what did he mean by that. He repeated again, "I just fucked you!" I told him that I didn't understand what he meant. He then stated "I just pissed all over your front seat." I immediately removed him from the vehicle in order to prevent further damage to the seat [and issued him four citations].

After admission of this evidence, Thomas moved to dismiss the case, arguing that the evidence did not prove that he had been offered a chemical test and thus, he could not have refused what he was never offered. The ALJ denied Thomas's Motion to Dismiss, and Thomas was immediately sworn in to testify.[7]

On the witness stand, Thomas simply testified that he had not been offered a chemical breath test, that he had never been transported to the police station, and that he had signed the citations issued to him. Thomas's attorney then argued that, because TA Section 16–205.1 required that Thomas be charged before Nemser could offer the chemical breath test, Thomas had only refused the preliminary breath test. The ALJ disagreed, finding that Thomas had been fully and properly advised of his rights and had refused the chemical breath test. The ALJ concluded that Thomas had alcohol in his system that night, citing Nemser's report that Thomas had been staggering about, had slurred speech, bloodshot eyes, and a strong odor of alcohol on his breath, could not exit his vehicle without falling to the ground, and later urinated in the front seat of the police vehicle. Accordingly, the ALJ did not give "much credibility to [Thomas's testimony that he had not refused a chemical breath test] because of the state he was in when all of this was occurring." The ALJ suspended Thomas's driver's license for 120 days, and disqualified his commercial driver's license for one year, pursuant to TA Sections 16–205.1(b)(1)(i)(3)(A) and 16–205.1(b)(1)(iii)(1).

Thomas challenged the ALJ's decision in the Circuit Court for Prince George's County, but was unsuccessful. In affirm-

---

7. Thomas was the only witness called to testify at the hearing.

ing the ALJ's decision, the Circuit Court determined that nothing in Nemser's Alcohol Influence Report or the DR–15 Advice of Rights Form would prevent a reasoning mind from coming to the same conclusion as the ALJ, and thus the ALJ's ruling must stand. Thomas then petitioned this Court for a Writ of Certiorari, which we granted.

## DISCUSSION

### I. Standard of Review

When reviewing an administrative agency's judgment, we are mindful of the highly deferential standard afforded to an administrative agency:

A court's role in reviewing an administrative agency adjudicatory decision is narrow; it is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record.

... [A] court's task on review is not to substitute its judgment for the expertise of those persons who constitute the administrative agency[.] Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.

*Motor Vehicle Administration v. Illiano*, 390 Md. 265, 274–75, 888 A.2d 329, 335 (2005) (quotations marks and citations omitted).

## II. Analysis

*A. Potential Gatekeepers: Whether Formal Charges Or An Arrest Must Precede A Request For A Chemical Breath Test*

■ Thomas argues that, according to TA Section 16–205.1, an officer has not fully advised a person of the administrative sanctions associated with refusing a chemical breath test until the officer has charged that individual with a violation of the motor vehicle laws. Thus, a person cannot be penalized for any test refusal that occurs before he or she has been arrested for drunk driving. As evidence, Thomas points to 16–205.1(b)'s language setting forth the consequences for a test refusal:

> [A] person may not be compelled to take a test. However, the detaining officer shall advise the person that, on receipt of a sworn statement from the officer that **the person was so charged and refused to take a test** . . . the Administration shall [suspend the driver's license].[8]

TA § 16–205.1(b) (emphasis added). Thomas claims that this language supports an interpretation that TA Section 16–205.1 requires a formal charge before the advice of rights is effective. He also claims sustenance from Sections 10–302 through 10–309 of the Courts and Judicial Proceedings Article ("CJP"),

---

**8.** Thomas also points to similar language contained in Section 16–205.1's predecessor, Art. 66½, Section 92A, to argue that Nemser could not offer him a chemical test until after he had charged Thomas with a violation. According to Article 66½, a driver cannot be issued a license until he or she has signed the following statement:

> I hereby consent to take a chemical test to determine the alcohol content of my blood, breath, or urine . . . should I be detained upon suspicion of operating or attempting to operate a motor vehicle while under the influence if intoxicating liquor or while my ability is impaired by consumption of alcohol, I understand that I cannot be compelled to take a chemical test for alcohol but I consent, in return for the privilege of operating a motor vehicle on the highways of Maryland, that the [DMV] may suspend my license . . . upon receipt of a sworn statement from the detaining officer and, after a hearing on said statement, **that I was so charged and refused to take a chemical test for alcohol.**

Md.Code (1957, 1970 Repl.Vol.), Article 66½, § 92A (emphasis added).

which govern evidence in relation to motor vehicle laws.[9] CJP Section 10–302 ("Chemical test for alcohol, drug or controlled dangerous substance content—Purpose") begins "[i]n a **prosecution** for a violation of law concerning a person who is driving or attempting to drive a vehicle in violation of [the motor vehicle laws] a [chemical breath test] may be administered[.]" (Emphasis added). Thomas reasons that the term "prosecution" assumes a charge against the driver for a violation of the law.

In addressing Thomas's arguments, we adhere to the well-known and oft-recited cannons of statutory interpretation. "[O]ur primary goal [when analyzing a statute] is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision[.]" *People's Ins. Counsel Div. v. Allstate Ins. Co.*, 408 Md. 336, 351, 969 A.2d 971, 979 (2009) (quotation marks and citations omitted). Our first step is to look at the statutory language. *See Johnson v. Mayor & City Council of Balt. City*, 387 Md. 1, 11, 874 A.2d 439, 445 (2005). "If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions, and our analysis ends." *People's Ins. Counsel*, 408 Md. at 351, 969 A.2d at 980. Throughout this process, this Court "must always be cognizant of the fundamental principle that statutory construction is approached from a 'commonsensical' perspective. Thus, we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Frost v. State*, 336 Md. 125, 137, 647 A.2d 106, 112 (1994) (citations omitted).

The General Assembly enacted TA Section 16–205.1 "to reduce the incidence of drunken driving and to protect public safety by encouraging drivers to take alcohol concentration tests; the statute was not meant to protect drivers."

---

9. This Court has held that TA § 16–205.1 and CJP §§ 10–302 through 10–309 are *in pari materia* and thus "must be construed harmoniously in order to give full effect to each enactment." *State v. Loscomb*, 291 Md. 424, 435, 435 A.2d 764, 770 (1981).

*Motor Vehicle Admin. v. Shepard,* 399 Md. 241, 255, 923 A.2d 100, 108 (2007). Accordingly, subsection (a)(2) provides:

> Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State **is deemed to have consented ... to take a test** if the person should be detained on suspicion of driving under the influence of alcohol[.]

(Emphasis added). The legislatively designed incentive for taking the test comes in the form of subsection (b)(1), which allows "a driver's license to be suspended promptly for suspected 11 drunken driving if the person refused a test to determine alcohol concentration." *Shepard,* 399 Md. at 255, 923 A.2d at 108.

Also contained within TA Section 16–205.1 is a list of procedures established by the General Assembly for an officer who "stops or detains" a driver on suspicion of drunk driving. Specifically, subsection (b)(2) states:

> [I]f a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving ... a motor vehicle while under the influence of alcohol ... the police officer shall:
>
> (i) **Detain the person;**
>
> (ii) Request that the person permit a test to be taken;
>
> (iii) Advise the person of the administrative sanctions that shall be imposed for test results indicating an alcohol concentration of at least 0.08 but less than 0.15 at the time of testing;
>
> (iv) Advise the person of the administrative sanctions ... that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.15 or more at the time of testing; and
>
> (v) Advise the person of the additional criminal penalties that may be imposed ... if the person knowingly refused to

take a test arising out of the same circumstances as the violation.

(Emphasis added).

In *Willis v. State,* 302 Md. 363, 488 A.2d 171 (1985), we held that TA Section 16–205.1's phrase "stops or detains" carried the same meaning as "apprehended" in CJP Section 10–303.[10] *See* 302 Md. at 376, 488 A.2d at 178. We stated that "an accused is 'apprehended' when a police officer has reasonable grounds to believe that the person is or has been driving a motor vehicle while intoxicated or while under the influence of alcohol and the police officer reasonably acts upon that information by stopping or detaining the person." *Id.* Later, in *Ashburn v. Anne Arundel County,* 306 Md. 617, 510 A.2d 1078 (1986), we held that TA Section 16–205.1 "was not invoked *until* the officer '*stops or detains* any individual.' " 306 Md. at 625, 510 A.2d at 1082 (emphasis in original). We went on to explain that "the word 'detain' is used twice in § 16–205.1" but that the second use of the word did not have a meaning different from or more restrictive than the first. *Id.* at 625 n. 1, 510 A.2d at 1082 n. 1. "Simply put, the proper interpretation of the section is: if the officer first detains (or stops) one whom he has reasonable grounds to believe is driving while intoxicated, the officer shall *further* detain the individual in order to carry out the procedures prescribed by the section." *Id.*

The word "detain" has multiple meanings, including "to arrest, to check, to delay, to hinder, ... to restrain from proceeding. . . ." *Black's Law Dictionary* 449 (6th ed.1990). Yet, for purposes of TA Section 16–205.1, it is evident that "detain" does not mean a formal arrest. That section applies when an officer "detains" a driver that the officer has "reasonable grounds" to believe is driving under the influence. *See* TA § 16–205.1(b)(2). The pairing of these two terms is crucial

---

**10.** The relevant portion of CJP Section 10–303 is subsection (a)(2), which provides: "For the purpose of a test for determining alcohol concentration, the specimen of breath or blood shall be taken within 2 hours after the person accused is *apprehended.*" (Emphasis added).

to our analysis. In a previous case, we have held that the "reasonable grounds" language signifies a detention short of arrest. *See Motor Vehicle Admin. v. Shepard*, 399 Md. 241, 254, 923 A.2d 100, 107 (2007). In *Shepard*, a driver argued that the "reasonable grounds" language meant that, at the very least, the officer must have probable cause. We rejected this argument, explaining that "Section 16–205.1 does not require an arrest to precede an officer's request for the driver to take a test[,]" but rather requires that "the person should be *detained* on *suspicion* of driving or attempting to drive while under the influence of alcohol." [11] *Id.* at 256, 923 A.2d at 108–09 (emphasis in original). Accordingly, we stated that "[g]iven the underlying purpose and plain language of § 16–205.1 requiring a detention and not an arrest, we conclude that the use of the word 'detained,' combined with the word 'suspicion,' means reasonable articulable suspicion and not probable cause." [12] *Id.* at 256, 923 A.2d at 109.

Consequently, looking at TA Section 16–205.1's list of procedures through the lens of the statute's legislative purpose and our caselaw, we agree with the ALJ and Respondent MVA that "[t]he 'so charged' [and 'prosecution' language], on which Mr. Thomas bases his argument, necessarily relates to prospective action that will be taken, based on the officer's

---

**11.** To be sure, *Shepard* is distinguishable from the situation here in that the *Shepard* driver had refused the chemical breath test after his arrest. 399 Md. at 247, 923 A.2d at 103. Our discussion of the alleged arrest requirement was relevant because the *Shepard* driver argued that, at his suspension hearing, the "ALJ applied the wrong legal standard in construing the meaning of 'reasonable grounds' " and that " 'reasonable grounds' [meant] 'a preponderance of the evidence standard' or at the very least, probable cause." *Id.* at 254, 923 A.2d at 107. Despite this distinction, our analysis and conclusion in that case is helpful to understanding the statute.

**12.** The importance of this distinction was made apparent in the seminal case *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968), where the United States Supreme Court held that the Fourth Amendment is not violated when a police officer, who does not have probable cause to arrest, stops a suspect on the street and conducts a limited search of him, so long as the officer has "reasonable grounds" to believe that the person is armed and has committed, is committing, or is about to commit a crime.

certification." Nowhere in the supplied procession of steps does TA Section 16–205.1 mandate that an officer make an arrest prior to advising the driver of his or her rights or requesting that the driver submit to a chemical breath test. Rather, the statute merely says that the officer shall "[d]etain the person" and "[r]equest that the person permit a test to be taken[.]" We agree with the ALJ that the "test is a form of evidence gathering[,]" and given that the statute was intended to protect the public and not the driver, we will not read into it an additional step that could hinder or delay an officer's investigation into suspected drunk driving. Therefore, we affirm the ALJ's conclusion that Nemser was not required to arrest or formally charge Thomas before requesting that he submit to a chemical breath test.

*B. Whether Nemser Misled Thomas Into Refusing The Chemical Breath Test*

Thomas claims that the ALJ erred in determining that he had been properly and fully advised of the consequences for refusing a chemical breath test because Nemser misled Thomas as to what test the officer was attempting to administer. He explains that the "Alcohol Influence Report evidences that after offering the [preliminary breath test] to [Thomas] and [Thomas's] agreement to take a [preliminary breath test], [Nemser] immediately began to read [Thomas] the DR–15." He claims that this was an error that "resulted in not only misleading [Thomas] but also an outright failure to properly advise [Thomas] under both [TA] §§ 16–205.1 and 16–205.2."

In his alcohol influence report, Nemser described his encounter with Thomas that night. In relevant part, he recounted:

THOMAS was staggering around until we had him sit on the curb. I asked him if he would like to take a preliminary breath test and he said yes. While reading the DR–15 to THOMAS, he informed me that he would not sign any paperwork or take a breath test. I took THOMAS into custody[.]

Thomas attempts to analogize this situation to those of *Fowler v. Motor Vehicle Admin.*, 394 Md. 331, 906 A.2d 347 (2006) and *Forman v. Motor Vehicle Admin.*, 332 Md. 201, 630 A.2d 753 (1993), to show that the preceding exchange was impermissibly confusing. In both of those cases, we reversed the license suspension and directed the ALJ to make additional findings as to whether the officer inadvertently deceived the driver regarding his or her rights under the statute.

In *Fowler*, the driver refused to submit to a preliminary breath test at the scene of the traffic stop, and was subsequently arrested and transported to the police station. 394 Md. at 337, 906 A.2d at 350. Fowler alleged that, at the station, the officer handed him the DR–15 Advise of Rights Form to read, but then informed Fowler that his license was being suspended because Fowler had already refused the test. *Id.* at 339, 906 A.2d at 351. Consequently, Fowler signed the DR–15 believing that he was merely acknowledging his refusal of the preliminary breath test. *Id.* at 340, 906 A.2d at 351–52. Similarly, in *Forman*, the driver alleged that, although she had been given and had read the advice of rights form, the officer negated the warnings contained within the form by suggesting that refusal did not necessarily result in an automatic license suspension. 332 Md. at 209–10, 630 A.2d at 758.

We explained that "[i]n Maryland, a prerequisite to the MVA's suspension of a driver's license after a hearing is a finding that the police officer requested a test after the person was *fully advised* of the administrative sanctions that shall be imposed[.]" *Forman*, 332 Md. at 217, 630 A.2d at 762 (emphasis in original) (quotation marks omitted). We clarified that "fully advised" under Section 16–205.1 "means not only advised *initially*, but the detaining officer must also take care not to *subsequently* confuse or mislead the driver as to his or her rights under the statute." *Fowler*, 394 Md. at 345, 906 A.2d at 355 (brackets and citations omitted) (emphasis in original). We warned officers to be "very cautious in providing information beyond that contained in the Advice of Rights form." *Forman*, 332 Md. at 218, 630 A.2d at 762.

Here, unlike the officers in *Fowler* and *Forman,* Nemser did not add to, negate, or misstate any of the rights enumerated in the Advise of Rights form. He merely offered Thomas a preliminary breath test, something that he was permitted, but not required, to do.[13] *See* TA § 16–205.2 ("A police officer who has reasonable grounds to believe that an individual [is driving under the influence of alcohol] **may** ... request the individual to submit to a preliminary breath test[.]") (emphasis added). After Thomas agreed to the preliminary breath test, Nemser began reading the DR–15 Advise of Rights Form, which states in its very first sentence that Thomas was being "asked to submit to a test under § 16–205.1 of the Maryland Vehicle Law[,]" i.e. a chemical breath test. We do not see any source of confusion; clearly the request that Nemser was making of Thomas at that time no longer pertained to the preliminary breath test. Moreover, Thomas cannot rely on the fact that he refused the test while Nemser was reading the DR–15. By signing the Advice of Rights form, Nemser certified that he advised Thomas of *all* of his rights as enumerated in the form, "including sanctions imposed for: 1) a refusal to take a test; 2) a test resulting in an alcohol concentration of at least 0.08 but less than 0.15; 3) a test resulting in an alcohol concentration of 0.15 or more; and 4) disqualifications for persons holding a commercial driver's license." (E.81) As the ALJ appropriately concluded, "based on the reading of [the] DR–15 it's indicated that there's a request [for the chemical breath test] in there[;] ... [thus, Thomas's] indication that he would not sign any paperwork or take the breath test is an adequate refusal for purposes of Section 16–205.1."

*C. Alleged Inconsistencies In Nemser's Sworn Statements*

In one last attempt to discredit the ALJ's ruling, Thomas claims that the ALJ improperly resolved the conflicting evi-

---

13. Accordingly, his offer but then subsequent failure to conduct the test cannot serve as grounds to reverse the ALJ's decision. Nor is it of any consequence that Nemser did not advise Thomas that, under TA Section 16–205.2, refusal of the preliminary breath test would not "prevent or require a subsequent chemical [breath] test[,]" because Nemser never acted on Thomas's acceptance to submit to the preliminary breath test.

dence presented by the Alcohol Influence Report and the DR–15. While he does not challenge the actual denial of the MVA's subpoena request, Thomas argues that the MVA's evidence, supplied by the Alcohol Influence Report and the DR–15, is contradictory, and that the ALJ failed "to resolve the inconsistencies in [those documents] in favor of [Thomas.]"

As Thomas concedes, the sworn statement of the officer is "prima facie evidence of a test refusal, ... [and] unless explained or contradicted, [is] sufficient to establish that the [driver] refused to take an alcohol concentration test." *Motor Vehicle Admin. v. Karwacki*, 340 Md. 271, 283, 666 A.2d 511, 516 (1995). If the only evidence contradicting the officer's sworn statement is the testimony of the driver, the ALJ is left with an "all or nothing choice" to either accept the driver's account or accept the officer's sworn statement. *See Karwacki*, 340 Md. at 289, 666 A.2d at 520 ("[B]y not subpoenaing the arresting officer and offering only his sworn testimony, directly conflicting the arresting officer's sworn statement on a critical point, the respondent presented the ALJ with an all or nothing choice."). "Clearly, under this scenario, the ALJ [is] under no obligation to believe the [driver]." *Id.*

According to Thomas, Nemser's Alcohol Influence Report demonstrates that Nemser never offered him a chemical breath test, a fact that was corroborated by Thomas's testimony at trial. Thomas alleges that the *prima facie* evidence of test refusal supplied by the DR–15 certification is destroyed when the DR–15 is compared to the Alcohol Influence Report. Thomas claims that, because this supposed inconsistency is supplied entirely by the officer's evidence, the ALJ should have interpreted the conflict in Thomas's favor.

Unlike Thomas, we do not see where the two documents are discordant. Rather, each document merely fills any gaps left by the other. In his report, Nemser stated that he read the DR–15 to Thomas, and that Thomas refused to take a breath test: "While reading the DR–15 to Thomas, he informed me that he would not sign any paperwork or take a breath test." As the ALJ observed, and we have already explained, the

"form in and of itself requests that an individual take a chemical test." Moreover, by signing at the bottom of the sheet, Nemser certified that he had read the entire DR–15 to Thomas, meaning that Thomas had been fully "advised ... of the [requisite] Advice of Rights[.]" Accordingly, we cannot find error with the ALJ's conclusion that Thomas was "properly advised and appropriately requested to take the chemical test."

## CONCLUSION

When stopping or detaining an individual an officer has reasonable grounds to believe is driving under the influence, the officer is not required to arrest or formally charge that person prior to offering him or her a chemical breath test or advising that person of his or her rights pursuant to the DR–15 Advice of Rights Form. Furthermore, an officer does not impermissibly confuse a driver into refusing a chemical breath test by simply failing to administer a previously agreed-upon preliminary breath test. Finally, where the sworn statements of an officer do not conflict internally, an ALJ is not required to accept the testimony of the driver over that of the officer.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONER.**