48 A.3d 803

## MOTOR VEHICLE ADMINISTRATION

v.

### Ronald William LIPELLA.

**No. 80, Sept. Term, 2010.**

Court of Appeals of Maryland.

June 25, 2012.

Reconsideration Denied Aug. 16, 2012.

Damon L. Bell, Asst. Atty. Gen. (Motor Vehicle Administration of Glen Burnie, MD; Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

D. Benson Thompson, III (John R. Salvatore and Susan M. Lochbaum of Law Offices of John R. Salvatore, LLC, Hagerstown, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY *, ADKINS, BARBERA, JJ.

PER CURIAM.

This case arises from an Administrative Law Judge's ("ALJ") suspension on November 17, 2009 of Respondent's, Ronald Lipella, driver's license for ninety days, pursuant to Maryland Code (1977, 2009 Repl.Vol.), Transportation Article, § 16–205.1(b)(1)(i)(2)(A) ("Implied Consent Statute").[1] The operative facts underlying the ALJ's decision began on August 29, 2009 when Washington County Sheriff's Deputy Jared Lee Barnhart pulled Lipella over for swerving outside the proper travel lane on a highway in Washington County. Discovering after he approached Lipella that the driver smelled of alcohol and slurred his speech, Barnhart administered to Lipella the three standard field sobriety tests ("SFSTs"), all of which he failed. His blood alcohol content ("BAC") registered 0. 16, based on a preliminary breath test administered in the field. Deputy Barnhart detained and transported Lipella to the Washington County Sheriff's Department where an official breathalyzer test was administered, which also registered a BAC of 0.16. His driver's license was confiscated for driving while intoxicated.

Upon judicial review of Lipella's license suspension, the Circuit Court for Washington County concluded that Deputy Barnhart failed to indicate adequately on the Motor Vehicle

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

1. Unless otherwise provided, all statutory references are to Maryland Code (1977, 2009 Repl.Vol.) of the Transportation Article. The subsections of the Implied Consent Statute (§ 16–205.1) in this case have not been changed since the time of the events in question.

Administration ("MVA") Form DR–15A[2] the reasonable grounds for the underlying traffic stop that led to the license suspension. Therefore, the Circuit Court held that the ALJ's suspension of Lipella's license was "unsupported by competent, material and substantial evidence in light of the entire record submitted." As we shall explain, the Implied Consent Statute does not require the officer to supply the grounds for the underlying traffic stop. Rather, the officer is required to provide on the DR–15A form the reasonable grounds for the suspect's intoxication. Thus, the ALJ concluded properly that the MVA mounted successfully a prima facie case, which was unrebutted, supporting the suspension of Lipella's license. Accordingly, we shall reverse the Circuit Court's judgment.

## FACTUAL AND LEGAL BACKGROUND

On August 29, 2009, at approximately 12:49 a.m., Deputy Barnhart of the Washington County Sheriff's Department observed a person, later identified as Lipella, traveling eastbound in a motor vehicle on Maryland Route 64 in Washington County.[3] Deputy Barnhart observed Lipella's car swerve twice onto the right shoulder and then move back onto the road, all the while traveling in excess of 65 mph. The posted speed limit was 50 mph. The Deputy signaled for Lipella to pull over. Upon first contact with the driver, Deputy Barnhart detected a strong odor of alcohol emanating from his person. He asked Lipella to step out of the vehicle and

---

**2.** The Motor Vehicle Administration ("MVA") Form DR–15A ("Officer's Certification and Order of Suspension") contains a section for the officer to indicate why he suspected the driver was under the influence. The MVA Form DR–15A will be discussed in detail, *infra*.

**3.** The facts presented here were gathered from the Alcohol Influence Report, which is the police officer's narrative of the entire incident—the underlying traffic violation, the officer's suspicions of intoxication, the results of the standard field sobriety tests, and the events at the police station. This document was admitted into evidence at the MVA hearing, although not relied upon explicitly by the Administrative Law Judge ("ALJ") in explaining why he found that the MVA presented a prima facie case. The admissibility of this document will be discussed further, *infra*.

administered the SFSTs.[4] Lipella exhibited signs of intoxication during the first test, the horizontal gaze nystagmus test, and could not complete the other two tests, due apparently to his inebriation.

Deputy Barnhart requested of Lipella that he submit to a preliminary breathalyzer test ("PBT"). Lipella acquiesced. The test yielded a BAC reading of 0.16. Barnhart placed Lipella under arrest for driving while intoxicated and transported him to the Washington County Sheriff's Office. Before administering the second BAC test, the Deputy informed Lipella of his right to refuse the breathalyzer test and the consequences of: (1) a refusal to take the test; (2) a result of BAC over 0.08; and, (3) a result of BAC over 0.15. These rights and consequences are detailed also on the DR–15 Advice of Rights form, which is a replica of the language in § 16–205.1. Lipella agreed to submit to the second, certified breathalyzer test, which also resulted in 0.16 BAC reading. A DR–15A Order of Suspension was issued, Lipella's license was confiscated, and he was issued a temporary driver's license pending the results of an administrative hearing before an ALJ of the Maryland Office of Administrative Hearings. Deputy Barnhart forwarded a copy of the completed DR–15A, as required by the Implied Consent Statute, to the MVA. The form explained, in part:

CERTIFICATION OF POLICE OFFICER

I, the undersigned officer, had reasonable grounds to believe that the driver described and named above had been driving or attempting to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a

---

4. The three standard field sobriety tests (SFSTs) performed were: the horizontal gaze nystagmus test, which evaluates a driver's ability to follow a horizontally moving point of reference (if intoxicated, the eyes present a jerky movement); the heel-to-toe walk test; and the one leg stand test.

vehicle safely while impaired by a controlled dangerous substance, in violation of an alcohol restriction of Section 16–813 of the Maryland Vehicle Law.

REASONABLE GROUNDS: *VEH[CLE WAS] STOPPED ON REASONABLE GROUNDS. UPON CONTACT WITH DRIVER I DETECTED A STRONG ODOR OF AN ALC[OHOLIC] BEV[ERAGE] AND HE HAD SLURRED SPEECH. DRIVER FAILED SFST. PBT—.16* [.]

Lipella requested timely an administrative hearing regarding the ninety-day suspension of his license. At the hearing,[5] Lipella argued that, because Deputy Barnhart wrote on the DR–15A only that the "veh[icle was] stopped on reasonable grounds[,]" the MVA's paperwork did not meet its prima facie burden to show that the officer had reasonable grounds to stop initially Lipella's vehicle. Lipella maintained that the officer was required to list on the DR–15A the specific reasons for making the underlying traffic stop. Without such information regarding the initial stop, Lipella complained he was precluded from presenting a bad faith challenge to the grounds for the stop, as permitted by Code of Maryland Regulations 11.11.02.10(H) (2012).[6]

The MVA retorted that, based on this Court's interpretation of the Implied Consent Statute in *Motor Vehicle Administration v. Illiano*, 390 Md. 265, 281, 888 A.2d 329, 340 (2005), the Deputy's duty to document and prove the driver's intoxication began after making the initial traffic stop and, thus, the motive for the initial traffic stop should not be considered. As this argument went, the basis for the traffic stop and the

---

**5.** Deputy Barnhart did not testify before the ALJ. The case was submitted by the MVA on its papers. Lipella did not seek an administrative subpoena for Barnhart to testify.

**6.** Code of Maryland Regulations 11.11.02.10(H) provides:
Notwithstanding the fact that evidence may have been seized or obtained in violation of a licensee's Fourth Amendment constitutional rights, the evidence is admissible unless the:
(1) Police officer, in obtaining or seizing the evidence, acted in bad faith and not as a reasonable officer should act in similar circumstances. . . .

evidence for suspecting intoxication are separate from one another, based on *Illiano,* 390 Md. at 281, 888 A.2d at 340 (holding that the Legislature's use of the phrase "stop or detain" in § 16–205.1(b)(2) serves to sever the stop from the detention, and permits reasonable grounds to believe intoxication of the driver may arise post-stop to justify the detention and request for administration of a breath test). The MVA sought to bolster its argument by contending that the Legislature intended to make it easier to remove intoxicated drivers from Maryland's roads by not requiring suspicion of intoxication necessarily to be developed prior to approaching the driver. To this end, the Implied Consent Statute was enacted to prevent endless litigation and achieve swiftness in removing intoxicated drivers from endangering the public; therefore, the underlying traffic stop's constitutionality is not a permitted issue to be raised at a license suspension hearing.[7]

As the MVA's argument continued, the ALJ should conclude that the MVA is required only to show, in making a prima facie case, that the officer had reasonable grounds to request the driver to take the official breathalyzer test. To this effect, the MVA relied upon *Motor Vehicle Administration v. Shea,* 415 Md. 1, 18, 997 A.2d 768, 778 (2010), where we held that the ALJ's duty is to determine whether the officer had reasonable grounds to request the accused to take a test to determine the BAC.

The ALJ suspended Lipella's license for ninety days because the DR–15A describing Deputy Barnhart's basis for

---

7. Section 16–205.1(f)(7)(i) enumerates seven issues that may be considered by the ALJ, whether: (1) the officer had reasonable grounds to believe the person was driving or attempting to drive impaired by alcohol or drugs; (2) there was evidence of the person's use of alcohol or drugs; (3) the officer requested the test only after the person was fully advised of the administrative sanctions as provided in (b)(2) of the Implied Consent Statute as listed on the DR–15 Advice of Rights form; (4) the person refused the test; (5) the person had a test result of 0.08 or more; (6) the person had a test result of 0.15 or more; and, (7) the person held a commercial driver's license ("CDL") or was driving a commercial vehicle, if the hearing involved disqualification of a CDL. *See* § 16–205.1(f)(7)(i).

suspecting intoxicated driving, and the official BAC test result administered at the Washington County Sheriff's Office, were sufficient to constitute a prima facie case. Although he admitted the Alcohol Influence Report into evidence, the ALJ felt he did not need to rely on the report as corroborating evidence because the MVA presented a prima facie case otherwise, using the DR–15A and the BAC results.

Additionally, although Lipella suggested tangentially a possible defense of bad faith on the part of the police officer, he adduced no evidence to call the police officer's statements into question. This scenario is illustrated by the following exchange between the ALJ and Lipella's attorney:

ALJ:

In the absence of bad faith, we don't even get into the stop. So I get Counsel's position, but I still think at this point, it's still a prima facie case, but it *could be refuted by evidence.* (emphasis added)

ATTORNEY:

Well, that's what the problem is. We don't know what to refute, because he didn't tell us.

ALJ:

Well, I can look at the corroboration to find out.[8]

ATTORNEY:

Well—

ALJ:

But it's still a prima facie case and in the absence of bad faith—and I can't make a presumption of bad faith—I have to make a presumption of good faith because the officer said

---

8. This is a reference to the Alcohol Influence Report, which read:

I [Deputy Barnhart] observed a grey passenger car traveling eastbound in front of me that appeared to be speeding. The vehicle veered sharply across the white line and onto the shoulder, and then returned back to the traffic lane. I paced the vehicle eastbound on Rt.64 from the intersection of While Hall road to the intersection of Twin Springs Drive in excess of 65 mph. While I was pacing the vehicle again veered sharply over the white line and then quickly returned to the lane of travel.

he had reasonable grounds. So, I'll just go ahead and admit them.[9]

ATTORNEY:

Ok.

In addition to not subpoenaing the Deputy to testify, Lipella did not testify on his own behalf at the hearing. Based on the admitted evidence, the ALJ held that the officer's stop was made in good faith and Lipella's license should be suspended for ninety days.

Lipella filed a petition for judicial review with the Circuit Court for Washington County, pursuant to Maryland Code (1984, 2009 Repl.Vol.), State Government Article, § 10–222. He renewed his assertion that the DR–15A, as completed by Deputy Barnhart, was overly vague and insufficient to constitute a prima facie case by the MVA. Additionally, due to the MVA's lack of evidence as to the grounds for the traffic stop, he asserted that he was deprived of the opportunity to raise and prove the defense that the stop was made in bad faith. Lipella also argued that the Alcohol Influence Report should not have been admitted into evidence in the administrative hearing because it was not a sworn statement and, if excluded, the MVA had no evidence to corroborate or supplement the insufficient DR–15A.

The MVA riposted that, under the Maryland Code (1984, 2009 Repl.Vol.), State Government Article, § 10–213(b), the ALJ may consider any probative evidence, as long it would be accepted commonly by reasonable and prudent individuals in the conduct of their affairs. *See* Md.Code Regs. 11.11.02.10(A) (2012). Furthermore, the MVA argued that § 16–205.1 enumerates the only permissible issues that may be raised at

---

9. Here, the ALJ referred to the documents he intended to admit into evidence: a copy of the hearing notice, transmittal form of delegation of authority to the ALJ from the MVA and certification of the records submitted by the MVA, Officer's Certification and Order of Suspension ("DR–15A"), Alcohol Influence Report, Advice of Rights ("DR–15"), Alcohol Test Result Certification ("MSP 33"), Intox ECIR (the breathalyzer equipment) print-out, and Lipella's prior driving record.

license suspension administrative hearings, and Lipella's "insufficient grounds for a stop" argument was not one of them. Specifically, the MVA maintained that this Court held in *Motor Vehicle Administration v. Richards*, 356 Md. 356, 368 n. 7, 739 A.2d 58, 65 n. 7 (1999), that the constitutionality of the underlying traffic stop was prohibited from being an issue at the administrative hearing, absent proof tendered by the driver that the officer acted in bad faith in making this stop. The MVA pointed out also that the DR–15A refers only to the reasonable grounds the officer had to believe the person was driving or attempting to drive under the influence, requiring no particular details be supplied in the first instance regarding the underlying traffic stop.

The Circuit Court concluded that, in order to enable Lipella to elect whether to raise a bad faith defense, the officer must list on the DR–15A specifically what he contended were the reasonable grounds for the underlying traffic stop. The judge held that, without adducing the specific reasons for the stop, the MVA did not make a prima facie case on this record. The Circuit Court explained why it was reversing the ALJ's decision and remanding the matter:

> [T]here should be the reasonable grounds for the stop were that x, y and z and Mr. Lipella would then have the opportunity to say, 'No, that wasn't true.'
>
> \*　　　\*　　　\*
>
> And therefore I do find that the findings of the Administrative Law Judge is unsupported by competent, material and substantial evidence in light of the entire record submitted. And also that it was arbitrary and capricious for this sanction to be imposed based on the reasonable ground being reasonable grounds.[10]

The MVA filed timely a petition for a writ of certiorari with this Court, under Maryland Code (1973, 2006 Repl.Vol.),

---

**10.** Here the judge is referring to the DR–15A section labeled REASONABLE GROUNDS, and that the Deputy failed to detail why he stopped Lipella's vehicle and rather only wrote "VEH[ICLE] [WAS] STOPPED ON REASONABLE GROUNDS[.]"

Courts and Judicial Proceedings Article, § 12–305, which allows for a direct appeal from the Circuit Court judgment regarding administrative hearings held under Title 16 of the Transportation Article. We granted the petition, *Motor Vehicle Administration v. Lipella,* 415 Md. 607, 4 A.3d 512 (2010), to consider the following question:

> In determining the sufficiency of an officer's sworn certification of grounds to request an alcohol concentration test under § 16.205.1, as recorded on the DR–15A, did the ALJ err in determining that the specific reasons for the underlying traffic stop need not be recorded under the section labeled "REASONABLE GROUNDS?"

We shall reverse the judgment of the Circuit Court and remand with directions to affirm the decision of the ALJ.

## STANDARD OF REVIEW

In judicial review of a state administrative agency (such as the ALJ decision here, where he acted on behalf of the MVA by express delegation), we review the action of the agency directly, rather than the judgment of the intervening reviewing court. *See Consumer Prot. Div. v. Morgan,* 387 Md. 125, 160, 874 A.2d 919, 939 (2005). Under the Maryland Administrative Procedure Act, a reviewing court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

 (i) is unconstitutional;

 (ii) exceeds the statutory authority or jurisdiction of the decision maker;

 (iii) results from an unlawful procedure;

 (iv) is affected by any other error of law;

 (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary and capricious.

Md.Code (1957, 2009, Repl.Vol.), State Gov't Art., § 10–222.

 In *United Parcel Service, Inc. v. People's Counsel for Baltimore County*, 336 Md. 569, 577, 650 A.2d 226, 230 (1994), we held that a court's role in reviewing an agency's adjudicatory decision is narrow and "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." The substantial evidence test evaluates "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978). Furthermore, significant weight is given to any reasonable factual inferences that the ALJ draws in license suspension proceedings specifically, *Shea*, 415 Md. at 18, 997 A.2d at 778 (quoting *Motor Vehicle Admin. v. Delawter*, 403 Md. 243, 256–57, 941 A.2d 1067, 1076 (2008)), as well as the statutory interpretations of an administrative agency in the field of its delegated authority from the Legislature. *See e.g., Md. Aviation Admin. v. Noland*, 386 Md. 556, 571–72, 873 A.2d 1145, 1154–55 (2005); *Fogle v. H & G Rest., Inc.*, 337 Md. 441, 445, 654 A.2d 449, 456 (1995) (holding that an agency's expertise in its own field should be respected). *See also* Md.Code (1984, 2009 Repl.Vol., 2011 Cum.Supp.), State Gov't Art., § 10–222(f), (h) (stating that "[j]udicial review of disputed issues of fact shall be confined to the record for judicial review," and "[i]n a proceeding under this section, the court may remand, reverse, or modify the decision of the administrative agency" if, inter alia, the decision "is unsupported by competent, material, and substantial evidence in light of the entire record as submitted").

## DISCUSSION

In reviewing the ALJ's decision, we consider only the evidence that was before the ALJ at the hearing. We will review first the evidentiary standards for administrative hear-

ings; evaluate the plain language requirements of § 16–205.1 and how they relate to the DR–15A; and, finally review the sufficiency of the evidence with regards to the ALJ's ruling on Lipella's contemplated bad faith defense and the suspension of his license.

As detailed in Code of Maryland Regulations (COMAR) § 11.11.02.10 (2012),[11] any proffered evidence that the ALJ determines to be probative and accepted commonly by reasonable and prudent persons in the conduct of their affairs, may be considered. In the present case, the ALJ admitted the Alcohol Influence Report. He mentioned that, although the Alcohol Influence Report would not be considered by him in determining whether the MVA had advanced a prima facie case, it could, if needed, be looked to for corroboration.

An ALJ, presiding over an administrative hearing of a driver's license suspension matter, may consider also evidence that might not be admissible in a court proceeding. *Motor Vehicle Admin. v. Weller*, 390 Md. 115, 133–34, 887 A.2d 1042, 1053 (2005). In *Weller*, we approved the admission in evidence of a PBT in a license suspension hearing. 390 Md. at 138, 887 A.2d. at 1056. Weller argued that § 16–205.1 prohibits specifically the PBT from being used in any "court action." *Weller*, 390 Md. at 135, 887 A.2d. at 1054. We held that, because the administrative hearing is not a "court action," the formal rules of evidence were not operative strictly and, thus, the PBT was permissible. *Weller*, 390 Md. at 135, 887 A.2d at 1053–54.

In *Motor Vehicle Administration v. McDorman*, 364 Md. 253, 262, 772 A.2d 309, 314 (2001), we reiterated that hearsay

---

11. Code of Maryland Regulations 11.11.02.10(A)-(C) (2012), reads, in pertinent part:

 A. Evidence that possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs may be admitted at a hearing.
 B. Incompetent, irrelevant, immaterial, and unduly repetitious evidence may be excluded.
 C. The ALJ or other trier of fact is not bound by the technical rules of evidence.

evidence may be admitted in administrative hearings and, if credible, may be the sole basis of a successful prima facie case. (Citing *Eger v. Stone*, 253 Md. 533, 542, 253 A.2d 372, 377 (1969)). Furthermore, we approved the use of an Alcohol Influence Report as evidence of a defendant's refusal of a breathalyzer test, which was the basis for the subsequent suspension of his driver's license. *Thomas v. Motor Vehicle Admin.*, 418 Md. 280, 298–300, 13 A.3d 1256, 1267 (2011).[12]

In the present case, the sworn DR–15A and the formal toxicology report of a BAC reading of 0.16 from the official breathalyzer test are prima facie case evidence, in and of themselves, proving a violation of § 16–205.1. *Accord Motor Vehicle Admin. v. Lytle*, 374 Md. 37, 51–52, 821 A.2d 62, 70 (2003) (holding that the Legislature intended for the completed DR–15A to be prima facie evidence of a violation of § 16–205.1). The Alcohol Influence Report, as corroborative evidence, may be admitted in an administrative hearing under COMAR 11.11.02.10(A) because it is a probative document that a reasonable police officer uses in the conduct of his duties. Just as the PBT in *Weller* was probative because it made the fact that Weller was driving while intoxicated more likely so than not, the Alcohol Influence Report in the present case makes it more likely so than not that Deputy Barnhart had a reasonable belief that Lipella was driving while intoxicated. Therefore, the ALJ admitted properly here the Alcohol Influence Report as corroborating evidence.

---

12. Thomas attempted to argue that because he was never offered a breathalyzer test he could not be cited for refusing the test. The crux of his argument was that the DR–15A conflicted with the Alcohol Influence Report. *Thomas v. Motor Vehicle Admin.*, 418 Md. 280, 298–99, 13 A.3d 1256, 1267 (2011). We determined that the DR–15A and Alcohol Influence Report were complimentary, and established the MVA's assertions that Thomas refused a breathalyzer and, thus, was in violation of the Implied Consent Statute. *Thomas,* 418 Md. at 299, 13 A.3d at 1267. It should be noted that *Thomas* was decided after Lipella's MVA hearing and the Circuit Court's review. Thus, neither the Circuit Court nor the ALJ had the benefit of that opinion in deciding Lipella's claim that the Alcohol Influence Report is inadmissible.

We examined, in detail, the plain meaning of § 16–205.1 in *Illiano,* 390 Md. at 278–79, 888 A.2d at 337–38, in order to determine if the Legislature intended to separate procedurally the events leading to the traffic stop from the detention events that lead to the request to take a breathalyzer test. *See also Richards,* 356 Md. at 368 n. 7, 739 A.2d at 65 n. 7. The DR–15A was created, using the requirements set out in § 16–205.1 [13] as a precise model, to record the information that led the police officer to suspect intoxication. Neither the form, nor the statute, require the officer to document the events leading to the underlying traffic stop, unless those events formed a part of the officer's suspicion of intoxication. The

---

13. Section 16–205.1 states, in relevant part:

(a)(2) Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title.

\* \* \*

(a)(2)(b)(1)(i)(2). For a test result indicating an alcohol concentration of 0.15 or more at the time of testing:

(A) For a first offense, suspend the driver's license for 90 days; ...
(a)(2)(b)(2) Except as provided in subsection (c) of this section, if a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol ... the police officer shall:

(i) Detain the person;
(ii) Request that the person permit a test to be taken
(iii) Advise the person of the administrative sanctions that shall be imposed for test results indicating an alcohol concentration of at least 0.08 but less than 0.15 at the time of testing;
(iv) Advise the person of the administrative sanctions, including ineligibility for modification of a suspension or issuance or a restrictive license unless the person participates in the Ignition Interlock System Program under § 4.1 of this title, that shall be imposed ... for test results indicating an alcohol concentration of 0.15 or more at the time of testing. . . .

only requirement is that the officer provide the "reasonable grounds to believe that the person had been driving or attempting to drive ... while under the influence of alcohol ...," and, therefore, to request the driver submit to a chemical test. § 16–205(2)(viii).

In *Illiano*, the officer did not stop Illiano while she was driving; on the contrary, Illiano brought her vehicle to rest directly behind the officer's patrol car on an active Maryland highway. 390 Md. at 269, 888 A.2d at 331–32. The officer developed no suspicions of possible intoxicated driving until he backed his patrol car alongside Illiano's and smelled alcohol on her breath. *Illiano*, 390 Md. at 269, 888 A.2d at 332. Because, § 16–205.1(b)(2) uses the disjunctive "stop or detain," instead of "stop and detain," this indicated that suspicions of intoxicated driving may arise separately from a traffic stop. *Illiano*, 390 Md. at 277, 888 A.2d at 336–37.

This Court approved various officer-driver encounters, ending in suspensions of persons' driver's licenses for intoxicated driving, even though they did not begin because of suspicion of intoxicated driving. For example, we affirmed a suspension that began when an officer approached a driver on the street, known as a "consensual encounter." *See Ferris v. State*, 355 Md. 356, 373 n. 4, 735 A.2d 491, 500 n. 4 (1999) (citing *United States v. Werking*, 915 F.2d 1404, 1408 (10th Cir.1990)). Another possible valid officer-initiated stop occurs when a non-moving violation of the Transportation Article attracts an officer's attention, such as being illegally parked on a highway, as demonstrated in *McDorman*, 364 Md. at 262, 772 A.2d at 315. Also, a police officer's reasonable belief of criminal activity may lead to a lawful interaction with a driver not related to intoxication. *See Richards*, 356 Md. at 357, 739 A.2d at 59–60; *Illiano*, 390 Md. at 279–80, 888 A.2d at 338.

If we were to accept Lipella's argument that the officer must document why the circumstances leading to the underlying traffic stop lead the officer to believe the driver was intoxicated, it would be difficult, if not impossible, to suspend a person's license for driving under the influence because there

would be plausible, non-alcohol-related, explanations for many moving-violations: e.g., driving too fast; distracted driving; or reaching for something on the floor. Furthermore, any non-moving violations, such as an expired tag, a non-working headlight, or an illegally parked vehicle, could not lead to the suspension of a driver's license because the police officer would have no reason necessarily to believe the person was intoxicated before he approached the driver in the vehicle.

In *Richards*, a Maryland State Police Trooper stopped Richards in his vehicle on the basis that, because there had been a rash of criminal activity in the area, the trooper determined that Richards's actions were suspicious,[14] but he had no reason to suspect intoxication before the stop. 356 Md. at 358–59, 739 A.2d at 59–60. What gave rise to a suspicion of intoxication was detection of a strong odor of alcohol emanating from Richards after the stop of his vehicle. *Id.* At the license suspension hearing, Richards challenged the constitutionality of the stop on the ground that the officer had no indications of Richards being intoxicated when the stop was made and, therefore, did not list the proper reasons to suspect intoxication on the DR–15A. *Richards*, 356 Md. at 359–60, 739 A.2d at 60. Richards argued that none of the evidence revealed during or after the stop could be considered in the ALJ hearing because it flowed from an unconstitutional traffic stop. *Richards*, 356 Md. at 367–68, 739 A.2d at 64–65. This Court rejected specifically the challenge to the constitutionality of the underlying traffic stop as a reason to prohibit the refusal, or results, of a breathalyzer in a license suspension hearing, unless the accused showed bad faith on the part of

---

**14.** Richards slowed his truck down in the middle of a road and then drove to the end of a dead-end street. *Motor Vehicle Admin. v. Richards*, 356 Md. 356, 358, 739 A.2d 58, 59–60 (1999). The trooper watched this and concluded that Richards either lived down the dead end street or he had no business in this neighborhood. *Richards*, 356 Md. at 358, 739 A.2d at 60. When Richards came out of the dead-end street without stopping, the trooper stopped him in order to inquire into Richard's reasons for driving around this neighborhood after midnight, which neighborhood had experienced a rash of vehicle thefts and night-time burglaries. *Richards*, 356 Md. at 358, 739 A.2d at 59–60.

the officer in making the stop. *Richards,* 356 Md. at 368 n. 7, 739 A.2d at 65 n. 7.

Lipella attempts (unpersuasively) to distinguish *Illiano* and *Richards* from the present case. *Illiano* provides an example of scenarios when there need not be a traffic stop preceding an officer developing reasonable suspicions of intoxication. 390 Md. at 269, 888 A.2d at 332. *Richards* demonstrates how the underlying stop need not be initiated solely because of suspicion of intoxicated driving. 356 Md. at 358, 739 A.2d at 59–60. In both cases, the suspicions of intoxication, SFSTs, and subsequent requests for a breathalyzer were sufficient, standing alone, to support the suspensions of the driver's licenses.

Applying in *Richards* the distinction between the basis for the underlying stop and the development of suspicions of intoxication, we concluded that the reasons for the stop do not bear necessarily on the suspicion of intoxication determination, as long as the stop was executed in good faith by the officer. 356 Md. at 368 n. 7, 739 A.2d at 65 n. 7. Deputy Barnhart's specific suspicions of intoxication on Lipella's part developed after he approached the car and smelled the alcohol odor on Lipella and heard Lipella slur his words. The request for a field breathalyzer was a result of these indications, not necessarily or solely because of Lipella's inability to keep the travel of his car within the lane markings, which may have been explainable otherwise as the result of distracted or drowsy driving, instead of intoxicated driving.

The DR–15A, which is based on § 16–205.1, compels enumeration by the officer only of the indications of the believed intoxication of the driver and does not compel attention to the reasons for the officer approaching the driver in the first instance if not believed to be indicative of the driver's intoxication. For example, under the section of the form labeled "ORDER OF SUSPENSION–ISSUE DATE (MONTH/DATE/YEAR)" the only preprinted boxes able to be checked are those regarding driving while intoxicated; there is no comparable section regarding the initial stop. Addition-

ally, in regard to the specific section of the form most relevant to the present case, "CERTIFICATION OF POLICE OFFICER," the instructions do not direct the police officer to indicate why he or she stopped the driver in the first place, only what the police officer's reasonable grounds were to believe the driver was under the influence:

> I, the undersigned officer, had *reasonable grounds to believe* that the driver described and named above had *been driving or attempting to drive a motor vehicle* on the highway or any private property that is used by the public in general in this State while *under the influence of alcohol*, while impaired by alcohol . . . (emphasis added)

Based on the requirements of § 16–205.1, Barnhart's insertion of a notation on the form that "veh[icle] [was] stopped on reasonable grounds" is superfluous to his later reasons to suspect intoxication, and if stricken from the DR–15A, the reasons for harboring suspicion of intoxicated driving would stand still because the Deputy detailed the smell of alcohol, slurred speech, and failed SFSTs on the DR–15A, which led to confirmatory 0.16 BAC readings on the two mechanical tests.

An accused driver's right to argue that the officer acted in bad faith in making the initial stop or collecting the evidence of intoxication is acknowledged. In *Shea*, 415 Md. at 17 n. 10, 997 A.2d at 777 n. 10, we ameliorated concerns about the lack of Fourth Amendment applicability to administrative hearings by explaining that COMAR 11.11.02.10(H)(1) provides for the possible exclusion of tainted evidence in an administrative hearing if it is shown the officer acted in bad faith. The ALJ, however, assumes good faith on the part of the officer unless the accused provides evidence of bad faith and asserts how it affects the hearing. *Richards*, 356 Md. at 378, 739 A.2d at 71.

For example, Illiano attempted to mount a bad faith argument by accusing the officer of fabricating the reasons for the initial traffic stop and the events that occurred after their first contact. *Illiano*, 390 Md. at 271, 888 A.2d at 333. The ALJ found incredulous Illiano's description of the events

leading up to her being administered a PBT and, therefore, rejected her argument. *Illiano,* 390 Md. at 271–72, 888 A.2d at 333. In *Chase v. State,* 309 Md. 224, 253, 522 A.2d 1348, 1362 (1987), we held that credible evidence showing the officer's improper motives may be adduced by the accused in such a way that would be sufficient to require the State to rebut it and attempt to re-establish that the officer's actions were in accord with reasonable law enforcement activities. Bad faith is an affirmative defense, and it was incumbent upon Lipella to present evidence tending to show bad faith on the part of Deputy Barnhart. *See also Sheetz v. Mayor & City Council of Balt.,* 315 Md. 208, 213, 553 A.2d 1281, 1283 (1989).

▮ Lipella did not adduce at the administrative hearing evidence of bad faith on Barnhart's part; rather, he contended only that he could not begin to argue bad faith without knowing, from Barnhart's pen, why he was stopped initially. Lipella did not attempt to cure this deficiency, even after the ALJ made it clear that, absent proof of bad faith, he would not consider the underlying traffic stop in his analysis of whether the MVA made out a prima facie case of Lipella's operation of his vehicle while intoxicated. Lipella could have sought a subpoena for Deputy Barnhart to appear for questioning at the suspension hearing; he did not. Lipella had the opportunity to present other evidence in an effort to implicate bad faith in the Deputy's initial stop; he did not. Having failed to mount a timely bad faith defense, Lipella waived effectively his right to raise such a claim on appeal.

▮ We turn now to whether there is substantial evidence in the administrative record to support the ALJ's suspension of Lipella's license. Whether the ALJ had enough evidence to suspend Lipella's license is determined by examining first the evidence that led the officer to request a breathalyzer test. *See Shea,* 415 Md. at 18, 997 A.2d at 778; *Motor Vehicle Admin. v. Shepard,* 399 Md. 241, 251, 923 A.2d 100, 106 (2007). As established *supra,* the analysis of the evidence begins when the Deputy made contact with the Lipella.

The ALJ credited that, after pulling over Lipella in his car, Deputy Barnhart detected a strong odor of alcohol and slurred speech emanating from Lipella. These indications were recorded on the DR–15A, which was enough to support reasonable suspicion to require Lipella to undertake the SFSTs. Lipella's failure in performing the SFSTs was recorded on the DR–15A. These factors led Deputy Barnhart to ask Lipella to submit to a field PBT, as authorized by § 16–205.1, resulting in a BAC of 0.16 reading. The 0.16 BAC result provided Deputy Barnhart with reasonable suspicion to transport Lipella to the Washington County Sheriff's Office for an official breathalyzer test. After reading the required DR–15, Advice of Rights, to Lipella, a toxicologist administered the official breathalyzer test, which resulted in a 0.16 BAC reading. The ALJ determined that the intoxication indications-slurred speech, odor of alcohol, failed SFSTs, and a PBT result of 0.16, as articulated on the DR–15A, along with the Result of Test for Alcohol Concentration Form, signed by the toxicologist-were sufficient for the MVA to make its prima facie case.

We conclude that the ALJ's findings and conclusions that Deputy Barnhart possessed reasonable grounds to request Lipella to submit to a formal breathalyzer test at the Washington County Sheriff's Office were supported by evidence in the record as a whole, and that that evidence demonstrated Lipella's violation of § 16–205.1(b)(1)(i)(2). The ALJ's decision to affirm suspension of Lipella's driver's license for ninety days per § 16–205.1(b)(1)(i)(2)(A) was correct and supported by substantial evidence. The Circuit Court erred in reversing the ALJ's suspension of Lipella's license.

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE. COSTS TO BE PAID BY RESPONDENT.**