REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 389

September Term, 2014

---

CHUKUEMEKA OKORO

v.

MARYLAND DEPARTMENT OF THE
ENVIRONMENT

---

Woodward,
Hotten,
Salmon, James P.
    (Retired, Specially Assigned),

JJ.

---

Opinion by Woodward, J.

---

Filed: May 28, 2015

Appellee, the Maryland Department of the Environment ("the Department"), initiated enforcement proceedings against appellant, Chukuemeka Okoro, after discovering violations of the Reduction of Lead Risk in Housing Act ("the Act") in two of Okoro's rental properties in Baltimore City. Okoro was granted a hearing before an Administrative Law Judge ("ALJ"), who found that Okoro had violated the Act, that his violations were willful and had the potential for harm to human safety, and that the Department's penalty of $37,500 was appropriate. Okoro petitioned for judicial review in the Circuit Court for Baltimore City, which reversed and remanded the ALJ's decision with instructions for the parties to argue the appropriate penalties without considering the violations' potential for harm to human safety.

On remand, the ALJ refused to allow Okoro to present additional evidence, and heard argument only on whether Okoro's violations were willful. The ALJ issued a revised decision, finding that Okoro's violations were willful, and assessing a penalty of $25,650. Okoro filed a second petition for judicial review in the circuit court, which affirmed the revised decision.

Okoro presents three questions for our review, which we have rephrased as follows:

1. Do substantial evidence and applicable law support the ALJ's finding that Okoro's violations were willful?

2. Did the ALJ err by refusing to allow Okoro to argue the issue of willfulness at the remand hearing?

3. Did the ALJ err by excluding the additional testimony proffered by Okoro regarding the lead risk reduction certificate for the Park Avenue property at the remand hearing?

We answer the first question in the affirmative and the second and third questions in the negative. Accordingly, we affirm the judgment of the circuit court.

**BACKGROUND**

Okoro is the owner of two residential rental properties in Baltimore, Maryland: (1) 105 West Saratoga Street, Unit 2 ("the Saratoga Street property"), and (2) 1408 Park Avenue, Unit 1 ("the Park Avenue property"). Both properties were constructed before 1950, and thus are considered "affected properties" subject to the registration and lead risk reduction certification requirements under the Act. *See* Md. Code (1996, 2013), §§ 6-801, -811, -812, -815 of Environment Article ("Env't")

In May of 2010, Kurt Kroncke moved into the Saratoga Street property. The Saratoga Street property was not registered as an "affected property," nor was a lead risk reduction certificate ("certificate") submitted to the Department upon the change of occupancy, as required by the Act. On August 10, 2011, Whitney Blomquist moved into the Park Avenue property. The Park Avenue property was initially registered as an "affected property" on May 2, 2004, but the registration had not been renewed as of Blomquist's move-in, nor was a certificate submitted to the Department upon the change of occupancy, as required by the Act.

On August 15, 2011, Blomquist reported to the Department that the Park Avenue property did not have a valid certificate, and the Department opened an investigation into all of Okoro's rental properties. After Okoro was informed of Blomquist's complaint in August

2

2011, he arranged for both properties to be inspected on October 31, 2011. Okoro filed a certificate for the Saratoga Street property on October 31, 2011, but the Park Avenue property needed remedial work before a certificate could be issued.

On March 15, 2012, the Department filed an Administrative Complaint, Order and Penalty ("Administrative Complaint") against Okoro for various violations of the Act. The Administrative Complaint alleged that Okoro (1) failed to register or renew the registration of the Park Avenue and Saratoga Street properties; (2) failed to bring both properties into compliance with the lead risk reduction standard; and (3) failed to obtain certificates for both properties. The Administrative Complaint ordered Okoro to bring all of his properties into compliance with the Act, and sought a $2,500 penalty for the registration violations, and a $35,000 penalty for the risk reduction violations.

On March 29, 2012, Okoro requested a hearing before the Office of Administrative Hearings (OAH) to contest the Administrative Complaint. Okoro registered the Park Avenue property and the Saratoga Street property as "affected properties" on April 8, 2012.

On June 12, 2012, a hearing was held before an ALJ, at which Okoro appeared *pro se*. At the outset of the hearing, Okoro moved to dismiss the Administrative Complaint on the grounds that he was in compliance with the Act. The Department conceded that the Saratoga Street property was "brought into compliance" with the risk reduction requirements as of the date of the filing of the Administrative Complaint, but alleged that "there was a significant period of time that that property was in violation." In addition, the Department

3

stated that the Park Avenue property remained in violation of the risk reduction requirements as of the date of the hearing, because there was no valid certificate on file with the Department. The ALJ denied the motion to dismiss, and both sides called witnesses and presented evidence on the merits.

In a decision issued on September 7, 2012, the ALJ determined: (1) Okoro violated the Act's registration and risk reduction certification requirements for both properties; (2) Okoro violated the Act's 100% compliance requirement; and (3) the Department's $37,500 penalty was reasonable and within its statutory authority. To decide whether the Department's penalty was appropriate, the ALJ considered eight factors, as required by the Act, and found that two factors were present: (1) Okoro's violations were willful, because he failed to exercise reasonable care in remedying the certification violation for the Park Avenue property, and provided no explanation for the other violations; and (2) Okoro's violations had the potential for harm to human safety, because Blomquist was a woman of child-bearing age. The ALJ ordered Okoro to pay the $37,500 penalty requested by the Department and bring the Park Avenue property into compliance with the Act's lead risk reduction requirements within thirty days.

On September 21, 2012, Okoro, now represented by counsel, filed a petition for judicial review in the Circuit Court for Baltimore City. In his memorandum filed on December 18, 2012, Okoro challenged (1) the ALJ's findings that Okoro had violated the Act's registration and certification requirements, that Okoro's violations were "willful," and

4

that the violations had the potential for harm to human safety, (2) the ALJ's impartiality, and (3) the ALJ's characterization of the Park Avenue property's certificate as "undated." The Department filed an Answering Memorandum on January 18, 2013.

On March 25, 2013, the circuit court held a hearing and issued an order holding that the Department failed to establish that Blomquist was a "person at risk" as defined by the Act, because the Department never proved that Blomquist was pregnant and spent at least twenty-four hours per week in the Park Avenue property. The court (1) reversed and remanded the agency's decision "insofar as it assesses penalties against [Okoro]," (2) ordered that the parties be "granted an opportunity to argue the issue of imposition of penalties without considering the 'potential for harm to human health or safety' factor," and (3) ordered the ALJ to make a determination of the imposition of penalties without considering the "potential for harm to human health or safety" factor.

On October 9, 2013, the ALJ held a remand hearing "to give the parties an opportunity to argue the issue of imposition of penalties." At the outset of the hearing, the ALJ heard argument on the Department's motion to quash Okoro's request for a subpoena of a Department employee ("Okoro's witness") to rebut the Department's testimony at the June 12, 2012 hearing regarding the status of Okoro's certificates on file with the Department. The ALJ granted the Department's motion to quash on the grounds that the circuit court's remand order did not provide that additional evidence could be taken at the remand hearing.

On the merits, the Department argued that the ALJ should uphold its original penalty

5

of $37,500, because Okoro's violations were willful. Okoro responded that his violations were not willful under Maryland law, because "he did not know of the violations" and he "had taken reasonable efforts" to remedy the violations as soon as he was made aware of them. Okoro reiterated his argument that the Department misled the ALJ at the previous hearing regarding the status of Okoro's certificates.

Two days after the hearing, Okoro filed a motion for mistrial on the ground, among others, that the ALJ erred in failing to allow Okoro's witness to testify at the remand hearing. This motion was denied.

On October 31, 2013, the ALJ issued a Revised Decision on Remand (the "Revised Decision"), ordering Okoro to pay a penalty of $25,650 and bring the Park Avenue property into compliance with the Act. The ALJ did not alter her original findings and discussion "except as necessary to comply with the remand order." The ALJ, however, did reduce the total amount of the penalty from $37,500 to $25,650.

Okoro filed a second petition for judicial review in the circuit court on November 18, 2013. The Department filed a response to Okoro's petition on November 25, 2013. Okoro filed a memorandum with the circuit court on February 18, 2014, arguing that the ALJ erred in (1) stating that she was limited on remand to consider argument on the potential for harm to human health and safety factor only, and (2) not allowing Okoro's witness to testify to rebut the Department's testimony at the June 12, 2012 hearing. The Department filed an Answering Memorandum on March 19, 2014, arguing that the ALJ's Revised Decision "was

6

based upon a proper application of the law, was supported by substantial evidence and complied with [the circuit court's] Order by excluding the 'potential harm to human health' penalty factor."

The circuit court held a hearing on Okoro's second petition for judicial review on April 23, 2014. On May 5, 2014, the court issued a Memorandum and Order affirming the ALJ's Revised Decision. On May 8, 2014, Okoro filed a timely notice of appeal to this Court.

**STANDARD OF REVIEW**

In reviewing an administrative decision, "[t]his Court looks through the circuit court's decision and evaluates the decision of the agency." *Wilson v. Md. Dep't of the Env't*, 217 Md. App. 271, 283 (2014) (citation and internal quotation marks omitted). Such review is limited to deciding "if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and . . . if the administrative decision is premised upon an erroneous conclusion of law." *John A. v. Bd. of Educ. of Howard Cnty.*, 400 Md. 363, 381 (2007). "The substantial evidence test evaluates whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Motor Vehicle Admin. v. Lipella*, 427 Md. 455, 467 (2012) (citations and internal quotation marks omitted). The Court of Appeals has stated that "[e]ven with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should

7

ordinarily be given considerable weight by reviewing courts." *Md. Aviation Admin. v. Noland*, 386 Md. 556, 572 (2005) (citations and internal quotation marks omitted).

Furthermore, an agency "has broad latitude in fashioning sanctions within legislatively designated limits." *Neutron Products, Inc. v. Dep't of the Env't*, 166 Md. App. 549, 584, *cert. denied*, 392 Md. 726 (2006). Therefore, "[a] reviewing court is not authorized to overturn a lawful and authorized sanction unless the disproportionality [of the sanction] or abuse of discretion was so extreme and egregious that the reviewing court can properly deem the decision to be arbitrary and capricious." *Noland*, 386 Md. at 581 (brackets in original) (citations and internal quotation marks omitted).

## **DISCUSSION**

### I. "Willfulness" Factor

First, Okoro argues that the ALJ erred in finding that Okoro's violations were willful, because "willfulness" under Maryland law requires an "intentional violation or deliberate intention or reckless disregard with an intent to cause harm," not merely a lack of knowledge of the law. According to Okoro, the ALJ's determination that Okoro's violations were willful was unsupported by evidence in the record, because the ALJ stated in her decision that she accepted as credible Okoro's testimony that he made efforts to comply with the Act's requirements, and that she erroneously ignored the evidence that Okoro was unaware of the violations.

The Department responds that the ALJ's findings concerning Okoro's willfulness

8

were supported by substantial evidence and were legally correct. According to the Department, willfulness in the environmental enforcement context "is considered in terms of the extent to which the existence of the violation was known but uncorrected by the violator, and the extent to which the violator exercised reasonable care." The Department contends that, because Okoro was aware of his obligations under the Act, substantial evidence demonstrated that Okoro did not exercise reasonable care in ensuring that he met such obligations.

Under the Act, rental property owners must annually register their "affected properties" (properties constructed before 1950) with the Department, and update those registrations and satisfy lead risk reduction standards with every change in occupancy. *See* Env't §§ 6-801, -811, -812, -815. The Act requires an owner to ensure that 100% of his affected properties satisfy these risk reduction standards by filing a current certificate of compliance for each affected property with the Department. Env't § 6-817.

The Department may impose a monetary penalty for any violation of the registration and certification requirements described above; each day a violation occurs constitutes a separate violation. Env't §§ 6-849, 7-266(b)(3). The Department may impose a maximum penalty of (1) $20 per day for failure to register (or renew registration of) an affected property, and (2) $500 per day for all other violations. Env't § 6-849(a), -850(a), 7-266. The penalty may not exceed $25,000 for each violation, or $100,000 in total. Env't § 7-266(b)(2)(i).

In evaluating the appropriateness of a monetary penalty for a violation, the following eight factors must be considered:

1. **The willfulness of the violation, the extent to which the existence of the violation was known to but uncorrected by the violator, and the extent to which the violator exercised reasonable care;**

2. Any actual harm to the environment or to human health, including injury to or impairment of the use of the waters of this State or the natural resources of this State;

3. The cost of cleanup and the cost of restoration of natural resources;

4. The nature and degree of injury to or interference with general welfare, health, and property;

5. The extent to which the location of the violation, including location near waters of this State or areas of human population, creates the potential for harm to the environment or to human health or safety;

6. The available technology and economic reasonableness of controlling, reducing, or eliminating the violation;

7. The degree of hazard posed by the particular waste material or materials involved; and

8. The extent to which the current violation is part of a recurrent pattern of the same or similar type of violation committed by the violator.

Env't § 7-266(b)(2)(ii) (emphasis added).

We agree with the Department that "[i]n the context of an environmental enforcement action, 'the willfulness of a violation' of an order is considered in terms of 'the extent to which the existence of the violation was known but uncorrected by the violator, and the extent to which the violator exercised reasonable care.'" *Gertz v. Md. Dep't of the Env't*, 199

10

Md. App. 413, 430-31 (quoting Env't § 9-342(b)(2)(ii)(1), the water pollution control statute, which contains identical language regarding "willfulness" as a factor to consider before assessing a penalty), *cert. denied*, 423 Md. 451 (2011); *see also Am. Recovery Co., Inc. v. Dep't of Health & Mental Hygiene*, 306 Md. 12, 21 (1986) (upholding a penalty in which the agency found that the appellant's environmental violation satisfied the "willfulness" factor, because the "hearing examiner expressly found that the company has been on notice about specific violations and has not remedied them" (internal quotation marks omitted)).[1] The statute requires the ALJ to consider both "the extent to which the existence of the violation was known to but uncorrected by the violator, and the extent to which the violator exercised reasonable care," before finding that a violation was willful. Env't § 7-266(a)(b)(2)(ii)(1). The ALJ need not, however, *find* both elements to be present to determine willfulness; he or she simply must *consider* both parts of the "willfulness" definition and make appropriate findings thereunder. *See id*.

---

[1] Okoro relies heavily on *Reisch v. State*, 107 Md. App. 464, 482 (1995), *cert. denied*, 342 Md. 332 (1996), claiming that "willfulness" is defined as an act of "intentional violation" or "deliberate intention or reckless disregard with an intent to cause harm." *Reisch* is clearly distinguishable from the instant case, both factually and legally. *Reisch* is a criminal case in which the issue was whether the appellant's failure to obtain a home improvement license was a "willful" violation of the Maryland Home Improvement Law, Md. Code 1957, Art. 56, §§ 261, 267. *Id*. at 466, 481. In determining the definition of the term "willful," we observed that "in *Ewell v. State*, 207 Md. 288, 299, 114 A.2d 66 (1955), the Court of Appeals said that '[t]he term "willfully" in criminal statutes . . . characterize[s] an act done with deliberate intention for which there is no reasonable excuse . . . .'" *Reisch*, 107 Md. App. at 481 (alterations in original) (emphasis added). Here, on the other hand, the ALJ found that Okoro violated the Act, and ordered him to pay a civil administrative penalty in accordance with Env't §§ 6-849(a), -850(a), 7-266(b)(2).

11

We conclude that substantial evidence supports the ALJ's finding that Okoro's violations were willful. The Revised Decision stated the following on willfulness:

**[The Department] presented evidence that [Okoro] was aware of the registration and certification requirements, because he had complied with those requirements for other properties he owned. [Okoro] did not deny that at the times relevant to this case, he knew about the registration and certification requirements.** He testified that since 2006, he used an inspector, Brian MacIver, to perform lead inspections and to submit certifications to [the Department], and that he relied upon a property manager, Jazma Robinson, to ensure that Mr. MacIver carried out these duties. **[Okoro] stated that he tried to do the right thing, and that when he was made aware of the violations, he "jumped" to fix them.**

**[Okoro] provided no explanation for the violations of the registration requirements, or the violation of the certification requirement for the Saratoga Street [p]roperty.**

As to the certification for the Park Avenue [p]roperty, [Okoro] testified as follows: He first learned of a problem in August 2011, and he told Ms. Robinson to take care of it. In October 2011, Mr. MacIver inspected the property but it did not pass because it required some work on the outside. After [Okoro] fixed the windowsills, Mr. MacIver "passed" the unit but did not complete a certification because of a dispute about his payment. There were several e-mail exchanges, and as of January 2012, [Okoro] believed the certification had been taken care of by Mr. MacIver. In March 2012, [Okoro] received the [Administrative] Complaint. He contacted Mr. MacIver, who raised concerns about changes in [the Department's] rules that might require a new inspection. In April 2012, Mr. MacIver told [Okoro] after discussions with [a Department] employee, he concluded that the prior inspection was sufficient.

[Okoro] provided records of e-mail correspondence with Mr. MacIver, showing that as of May 8, 2012, the certification had not yet been completed. [Okoro] also provided a copy of a certification by Mr. MacIver for the Park Avenue [p]roperty, with no inspection date.

12

[A Department employee] testified that the certification without an inspection date had been submitted by the inspector to [the Department] with a notation "VOID" written across it. She stated that because of this notation, and because the certification had no inspection date and no supporting documents, it was not considered valid by [the Department].

**I accepted [Okoro's] testimony as credible evidence of his efforts to comply with the certification requirement for the Park Avenue [p]roperty. It is clear, however, that over a prolonged period of time, continuing to the date of the hearing, [Okoro] failed to accept the responsibility for ensuring that the certification requirement was met. He did not exercise reasonable care. [Okoro] also presented no explanation for the other violations charged in this case. Willfulness in these violations has been shown.**

(Emphasis added) (citations omitted).

As indicated above, the ALJ found that Okoro's violations were willful, because he knew the law and failed to exercise reasonable care to ensure his compliance with the law. The ALJ heard testimony that Okoro was aware of the registration and certification requirements, because he had complied with these requirements for his other properties. Moreover, the Department had accredited Okoro "to perform the work necessary to bring affected properties into compliance." Thus, with substantial evidence of Okoro's knowledge of the law, the issue before us centers on the existence of substantial evidence, *vel non*, that Okoro failed to exercise reasonable care in ensuring that the subject properties were in compliance with the law.

*A. Registration Requirements*

Okoro testified that he had employed someone to register his properties, but that he

13

"personally registered these properties" after learning of the registration violations. It is undisputed that new tenants moved into the Saratoga Street property in May 2010 and in the Park Avenue property in August 2011, thus triggering the requirements of registration (or re-registration). It is also undisputed that neither property was registered until April 8, 2012. Okoro did not present any explanation for the twenty-three month delay in registering the Saratoga Street property and the eight-month delay in registering the Park Avenue property, other than he delegated that responsibility to his property manager. In our view, Okoro's delegation to his property manager of the responsibility to comply with the registration requirements of the Act without also ensuring such compliance did not constitute the exercise of reasonable care where the lack of compliance continued over a prolonged period of time. As a result, there is substantial evidence in the record that Okoro failed to exercise reasonable care to ensure the properties satisfied the registration requirements.

*B. Certification Requirements*

1. Saratoga Street Property

Both Okoro and the Department presented evidence that the Saratoga Street property was brought into compliance with the certification requirements on October 31, 2011. Okoro, however, did not provide any explanation for his failure to have the Saratoga Street property comply with the certification requirements from the change in occupancy in May 2010 to October 31, 2011, other than the delegation of that responsibility to his property manager. As previously stated, Okoro's delegation to his property manager of the

14

responsibility to comply with the certification requirements of the Act without also ensuring such compliance did not constitute the exercise of reasonable care where the lack of compliance continued over a prolonged period of time. As a result, there is substantial evidence that Okoro failed to exercise reasonable care to ensure that the Saratoga Street property was brought into compliance with the certification requirements.

## 2. Park Avenue Property

Okoro did make efforts to ensure that the Park Avenue property was in compliance with the certification requirements, but there is substantial evidence that he did not exercise reasonable care in remedying a known violation. The ALJ credited Okoro for those efforts by assessing a lower monthly penalty for the certification violation at the Park Avenue property than she did for the certification violation at the Saratoga Street property. Both Okoro and the Department presented evidence that the Park Avenue property needed further work to bring it into compliance with the certification requirements. Okoro testified that he attempted to bring the Park Avenue property into compliance by delegating this task to his property manager, and that Okoro thought—but did not verify with the Department—that the Park Avenue property was in compliance by December 2011 or January 2012. The ALJ found that Okoro failed to use reasonable care in remedying the Park Avenue property violation, because he "failed to accept the responsibility for ensuring that the certification requirement was met." Okoro testified that he took the inspector at his word that the certificate was filed, and that the inspector was "procrastinating" in filing the Park Avenue

15

property's certificate.

Even if Okoro believed that the inspector had taken care of the certification requirements for the Park Avenue property, we agree that Okoro failed to use reasonable care by not following up with the Department to ensure that the property was in compliance with the Act. Given the length of time that passed between when Okoro was put on notice of the Park Avenue property violations in August 2011, and the date of the hearing in June 2012, when the Park Avenue property was still not in compliance, we agree that Okoro's mere belief that he was in compliance is an insufficient exercise of reasonable care under the Act. Furthermore, Okoro's belief that he was in compliance in March 2012, when he received by fax a copy of a certificate of compliance, is unreasonable, because his inspector did not fill in a date of inspection on the certificate; the certificate thus was clearly invalid. Accordingly, there is substantial evidence in the record to support the ALJ's finding that Okoro failed to exercise reasonable care in remedying the known violation at the Park Avenue property.[2]

Finally, it is important to note that iff we adopt Okoro's standard of reasonable care

---

[2] We also observe that the ALJ was authorized to assess a penalty of up to $20 per day for the registration violations, and $500 per day for the certification violations, as long as the total penalty did not exceed $100,000. Env't §§ 6-849, -850, 7-266. The ALJ imposed a penalty of $2,500 for the registration violations, $1,000 per month for the certification violation at the Saratoga Street property, and $500 per month for the certification violation at the Park Avenue property. These penalties are clearly within the agency's discretion, because they fall well below the maximum penalties allowed under the Act. *See Neutron Products, Inc. v. Dep't of the Env't*, 166 Md. App. 549, 593 (upholding a penalty of $40,700 for 3,626 violations, even though the Department did not assign a particular penalty amount for each violation, because the penalty did not exceed the statutory cap for each violation or for the aggregate penalty), *cert. denied*, 392 Md. 726 (2006).

16

and conclude that his violations were not willful because he delegated the task of compliance to his property manager, rental property owners would escape any penalty under the Act as long as their property managers never informed them of their noncompliance. Such interpretation would render the statute's enforcement scheme ineffective, because rental property owners, not their managers, are held responsible under the Act for ensuring compliance. *See* Env't §§ 6-801, -811, -812, -815, -817.

## II. "Willfulness" Argument at Remand Hearing

Next, Okoro contends that the ALJ erred in not allowing him to argue the issue of willfulness at the remand hearing on October 9, 2013. According to Okoro, the ALJ "refused to hear argument on the question of willfulness, determining that this issue was not part of the argument on penalties and one that she would not 'reopen.'" Okoro argues that willfulness "was still relevant because it was the only statutory penalty factor remaining and therefore directly relevant to the penalty hearing."

The Department responds that both parties were afforded an opportunity to present argument on Okoro's willfulness at the remand hearing on October 9, 2013. According to the Department, the claim that the ALJ refused to hear argument on this issue at the remand hearing "is belied by eight pages of transcript, reflecting that the majority of [ ] Okoro's argument focused on willfulness."

We disagree with Okoro's contention that the ALJ did not allow him to argue the issue of willfulness at the remand hearing. Okoro is correct that the remand hearing's transcript

17

reveals that the ALJ stated the following: "It is my intention to do what the Court orders, to take no evidence today, and to hear argument, first from [the Department], then from [Okoro], then back from [the Department], on the subject of potential for harm to human health and safety, excluding the Blomquist factors." Okoro interprets this statement to mean that the ALJ did not allow Okoro to argue the issue of willfulness at the remand hearing.

Okoro's interpretation cannot stand, however, because both of the parties' arguments at the remand hearing focused exclusively on willfulness, with neither side presenting any argument "on the subject of potential for harm to human safety." For example, the Department began its argument by stating that "based on the penalty factor of willfulness alone, it's the Department's position that the penalty assessment of $37,500 should not be altered." The Department argued that "willfulness would be the most egregious penalty factor," and then cited two cases discussing the penalty factors. The Department concluded its argument by stating that "based on [the ALJ's] factual findings, dates of non-compliance, the amount of maximum penalty that the Department is able to assess for failing to register and failing to obtain certificates, coupled with the assessment of the penalty factors, [the ALJ's] finding that the violations were willful, I believe is more than enough to uphold the entire . . . $37,500 penalty." Similarly, Okoro began his argument by defining willfulness "as somebody knowing about a violation or intentionally violating." Then, Okoro argued that there was no evidence in the record to support a finding that Okoro's violations were willful.

According to the transcript, the ALJ did state that she would only hear argument "on

18

the subject of potential for harm to human health and safety, excluding the Blomquist factors." We believe, however, that the ALJ's comment was either a misstatement or an error in the transcript. The ALJ read from the circuit court order twice, stating that "that the parties are hereby granted an opportunity to argue the issue of imposition of penalties *without considering the potential for harm to human health and safety factor* listed under Section 6-819(a)(3)(iv) as it relates to Blomquist." (Emphasis added) Thus, the ALJ clearly understood that she was permitted to hear argument on the willfulness factor, and did in fact hear such argument. Accordingly, Okoro's contention that the ALJ did not permit him to argue willfulness at the remand hearing is without merit.

### III. Additional Testimony at Remand Hearing

Finally, Okoro argues that the circuit court erred in failing to reverse the ALJ's decision to exclude his proffered additional testimony at the remand hearing. Specifically, according to Okoro, the ALJ erred in not allowing Okoro's witness to testify at the remand hearing, because the witness's testimony regarding the status of his certificates on file with the Department was "directly relevant to the issue of willfulness." Okoro contends that his witness's testimony would have "contradict[ed] the evidence [the Department] submitted" regarding Okoro's willfulness at the June 12, 2012 hearing.

The Department responds that the ALJ did not err in refusing to permit Okoro's witness to testify at the remand hearing. The Department contends that such testimony "would have provided only factual information" regarding Okoro's certifications, which

"would have been inconsistent with the Remand Order by opening up the case for additional evidence."

At the remand hearing on October 9, 2013, the ALJ was bound by the circuit court's March 25, 2013 order (the "Remand Order"). The circuit court reviewed its Remand Order in its October 31, 2013 Memorandum and Order when it found that the ALJ committed no error:

> At the remand hearing, [Okoro] wished to introduce additional testimony said to relate to the willfulness factor which was already addressed by the ALJ's findings. Consistent with the direction of the remand order, the parties were provided the opportunity to argue the penalties to be imposed, based on existing evidence and excluding reference to potential harm. [The circuit court's] order on remand did not instruct or require further fact-finding on the penalty issue. Thus, it was appropriate for the OAH to restrict the hearing to argument on the appropriateness of the penalty.

In other words, whether the ALJ erred at the remand hearing depends upon the scope of the Remand Order, because the ALJ was bound by such order. We agree with the circuit court that the ALJ complied with the Remand Order when she refused to allow Okoro to present new evidence at the remand hearing, because the Remand Order did not authorize or require new evidence. In the instant appeal, Okoro does not challenge the Remand Order itself, assuming such challenge is permitted,[3] and thus we cannot reach any issue relating to

_____

[3] Okoro did not note an appeal to this Court from the Remand Order, which is an appealable order. *See Metro Maint. Sys. South, Inc. v. Milburn*, __ Md. __, __, No. 31, September Term 2014 (filed Mar. 30, 2015) slip op. at 14 ("In sum, a remand after a circuit court has conducted judicial review that precludes the parties from further contesting or
(continued...)

20

the limitations placed by the Remand Order on the ALJ at the remand hearing. Accordingly, the ALJ did not err in excluding the additional testimony offered by Okoro at the remand hearing.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; APPELLANT TO PAY COSTS.**

---

[3](...continued)
defending the validity of the agency's decision in that court—and leaves nothing further for the court to do—is a final judgment.").